**Affirmed and Opinion filed April 17, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00351-CV

---

**BREOF BNK TEXAS, L.P., Appellant,**

**V.**

**D.H. HILL ADVISORS, INC. AND D.H. HILL, INDIVIDUALLY, Appellees.**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-05033**

---

## OPINION

This is a breach-of-contract case concerning a commercial lease. Appellant Breof BNK is the landlord, and appellee D.H. Hill Advisors, Inc., is the tenant. Dan Hill, also an appellee, is Advisors' principal investor. After a bench trial, the trial court rendered a take-nothing judgment against Breof, awarded actual damages and attorneys' fees to

Advisors and Hill, and issued findings of fact and conclusions of law in support of its judgment. We affirm.

I

In late spring and early summer of 2008, Advisors was nearing the end of its five-year lease of an office suite in Humble, and it began negotiations with Breof for a new lease in the same space. In these negotiations, Breof was represented by a real-estate agent and Advisors was represented by Hill, individually, acting in his capacity as a licensed real-estate broker. The previous lease was set to expire on October 5, 2008.

Having established a reputation at that office and not wanting to change locations, Advisors intended to stay. But negotiations dragged on for several months, partly because appellees insisted that Breof make certain improvements to the office space. The appellees asked Breof to repaint the walls, install wood flooring, carpet, and an ADA-compliant restroom.[1] Installation of the restroom was particularly important to the appellees; throughout the term of its previous lease, the only restroom available to Hill and other Advisors employees was located on another floor of the office building. During negotiations, Hill made it clear that without the restroom, Advisors would not sign a new lease.

Breof agreed to install the restroom in a specified location adjacent to Advisors' suite, and agreed to do so by November 1, 2008. The date was important to the appellees because the fourth quarter is Advisors' busiest. In May, Breof began accepting preliminary bids from contractors for the painting and new construction. By June, it had contacted an architect to draft plans for the restroom installation. Also in June, at least one contractor toured Advisors' suite in preparation for submitting his bid to Breof. That contractor was eventually hired to complete the remodeling Breof promised in the lease. In contrast, the architect never physically inspected Advisors' suite, and he noted as

---

[1] Nowhere in the record do the parties specify what ADA stands for, but we presume it is the Americans with Disabilities Act, the requirements of which are set out in the ADA Accessibility Guidelines. *See* 28 C.F.R. § 36.406 (2011).

much with an explicit disclaimer on the proposal he submitted.[2] Based on his tour of the suite and the architect's proposal, the contractor submitted his preliminary bid in June, estimating that the bathroom could be built in two to three weeks.

Lease negotiations extended into the fall of 2008. At some point, Breof's real-estate agent informed Hill that if a new lease were not signed by October 5—the end of the previous lease term—Advisors would be subject to a holdover provision. Hill then asked for reassurances the bathroom could be built by November 1. If not, Hill told the agent, he would immediately begin to look for office space elsewhere. The agent assured Hill that the work could be done by November 1, and Hill executed the lease on behalf of Advisors on October 3. Upon signing the lease for Advisors, Hill earned a brokerage fee of $17,026.66, an amount previously agreed to by the parties, though Breof did not immediately write a check for that amount. Without any explanation or warning, Breof waited until October 27 (more than three weeks later) to execute the lease. Without a fully executed lease, the contractor could not apply for the necessary construction permits; so during this period, no progress was made toward the improvements required under the lease.

---

[2] Understandably, the trial court asked the architect why he had not done an in-person assessment. The following exchange from the record is informative.

> *THE WITNESS:* Well, [in this case, the suite we would be working on] was occupied. A lot of times the landlord will say that [the space] is occupied, and when we first start up, they don't tell us to go and look. Sometimes they will tell us later, [T]his is coming up, please verify.

> *THE COURT:* So, in other words, you have to get authority from them to spend the time and their money to go out and verify?

> *THE WITNESS:* Yes.

> *THE COURT:* You weren't asked to do that in this case?

> *THE WITNESS:* That's right.

> *THE COURT:* Whose responsibility then is it to verify it if you're not given the authority to go do it?

> *THE WITNESS:* Well, the thinking is if we do a plan like that, we put that disclaimer, that everybody involved will look at it and, really, that shows what the final plan is going to look like. And the thinking is between all the other people involved, they will kind of look at it and see if there is anything obviously wrong.

3

November 1 passed without any construction on the leasehold. Sometime in mid-November, Breof asked the contractor to inspect Advisors' suite and make a detailed estimate of remodeling costs. Finally, on November 18, Breof signed an agreement with the contractor. Only then was it discovered that the architect had based his proposal on an outdated floor plan. In addition to the floor-plan discrepancies, the contractor discovered a column in one of the walls that substantially complicated the construction. Shortly thereafter, the contractor informed Hill it was impossible to build the restroom at the location designated in the lease. Angered, Hill informed the contractor and Breof that without the restroom, "the deal is off." He was receptive, however, when Breof told him it would look into alternative locations for the restroom: "When they said they could come in and make some changes to the mailroom to possibly make it work[,] I was okay. I was open to that."

On December 1 and 12, Breof presented alternative plans, both of which drastically changed the suite's layout and made the lobby area "look like a maze." Hill rejected those plans. Breof then suggested that Advisors move its offices to the building's second floor, which already included a bathroom. Hill and other Advisors employees spent several days making measurements and calling furniture companies about reducing the size of Advisors' cubicles—which were too large to bring to the second floor. Advisors decided that a move to the second story "probably would have worked," but Breof then provided several new proposals for remodeling the first-floor suite, all of which included major redesigns. On December 16, in the midst of this flurry of new proposals, Breof wrote a check to Hill for his broker's commission; Hill deposited that check into his bank account on December 23. On December 31, Advisors received a letter invoicing him for January rent and informing him that construction would likely continue until February 28, 2009. The letter also informed Hill that if he refused to pay rent, "this matter shall be turned over to the [l]andlord's attorney for enforcement of the [l]ease." At that point, having "no confidence in [Breof's] ability to get things done," Hill immediately attempted to contact Breof. After several unsuccessful attempts, Advisors

vacated the suite and leased a new space elsewhere, incurring $10,063.65 in moving expenses.

Breof brought suit against Advisors and Hill for an assortment of claims, and both Advisors and Hill countersued for damages and recovery of attorneys' fees. After a bench trial, the trial court rendered a take-nothing judgment against Breof on all of its claims. The trial court further rendered judgment in favor of the appellees on their counterclaims for actual damages of $10,063.65 and attorneys' fees in the amount of $68,467.00. The trial court also entered findings of fact and conclusions of law. Breof's motion for new trial was denied, and this appeal followed.

II

Breof raises five issues on appeal: (1) the trial court erred by finding that Breof instead of Advisors had breached the lease, when the evidence was not factually and legally sufficient to support such a finding; (2) the judgment below was effectively a rescission of the lease, and it was error to award rescission without ordering Advisors to pay November and December rent; (3) a mutual mistake of fact existed because it was impossible to build the bathroom in the location contemplated in the lease, and the trial court erred by failing to find such a mistake and ordering rescission of the contract and payment of November and December rent; (4) Advisors waived strict compliance with the lease, and it was error for the trial court to find otherwise; and (5) the trial court erroneously awarded damages despite a lack of evidence and a lease provision shielding Breof from liability.

A

In its first issue, Breof asks us to reverse the trial court's judgment that Breof breached and Advisors did not, and render the opposite result. We decline to do so.

When confronted with both legal- and factual-sufficiency points, we must first examine legal sufficiency. *Mohnke v. Greenwood*, 915 S.W.2d 585, 589 (Tex. App.— Houston [14th Dist.] 1996, no writ). In so doing, we examine the evidence in the light

5

most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* A party attacking the legal sufficiency of an adverse finding on an issue on which he has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Breof centers its legal-sufficiency argument on its assertion that the November 1 completion date was not a material term of the lease, so Advisors was not released from its duties under the lease when Breof failed to build the bathroom by that date. *See* Restatement (Second) of Contracts § 237 (1981). The trial court concluded that the restroom was a material term, as was the installation of wood flooring and carpet. The question of whether a term is material is a legal one, and we review it de novo, taking each contract on a case-by-case basis. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

For timely performance to be a material term in a contract, the parties must expressly state that time is of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence. *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). Ordinarily, time is not of the essence, and a date stated for performance does not mean time is of the essence. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Unless the contract expressly makes time of the essence, the issue is a fact question. *Id.* When it is clear the parties intend that time is of the essence to a contract, untimely performance is a material breach discharging the duties of the non-breaching party. *See*

*Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam).

Exhibit C of the lease provides that Breof "shall use commercially reasonable efforts to cause [all the contemplated improvements—including the bathroom, repainting, and installation of new flooring] to be completed prior to November 1, 2008." However, the lease does not go further to explicitly make time of the essence. This makes the parties' intent a fact issue. *See Kennedy Ship & Repair*, 210 S.W.3d at 19. In finding of fact No. 17, the trial court found that "The restroom was required to be built and the wood flooring and carpet installed by November 1, 2008 under the terms of the [l]ease." The evidence supports this finding:

- During negotiations for the new lease, Hill made it clear Advisors would not sign a new lease without the installation of the ADA-compliant restroom.

- Advisors' employees had gone the entirety of the previous five-year lease without access to a restroom on their floor.

- Hill informed Breof that "the fourth quarter is [Advisors'] most busy period."

- Breof began accepting bids for the construction work by May, and it had solicited plans form an architect by June.

- Breof accepted the preliminary bid from the contractor it would eventually hire in June.

- The contractor estimated the project would be done in two to three weeks.

- Breof threatened Advisors and Hill with holdover penalties if a new lease was not signed by October 5.

- Hill informed Breof he would look for another office space if the restroom could not be built by November 1.

- On October 3, Breof reassured Hill that the restroom could be completed by November 1.

7

- Based on this reassurance, Hill signed the lease on behalf of Advisors that day.

We affirm the trial court's holding that the November 1 date was a material term in the lease, and Breof's failure to timely perform was a material breach. *See Deep Nines*, 246 S.W.3d at 846. Because the November 1 deadline was a material term, when Breof failed to timely perform, Advisors' duties under the lease ended. *See Mustang Pipeline*, 134 S.W.3d at 196. And, because Advisors was no longer bound under the lease, Advisors could not breach by abandoning the office space or failing to pay rent. The evidence supports Advisors' contention that a reasonable and fair-minded person would come to the same conclusion as the trial court. *City of Keller,* 168 S.W.3d at 822. It is legally sufficient. *See id.*

Likewise, the evidence is factually sufficient to support the trial court's conclusion that Breof breached and Advisors did not. When a party challenges the factual sufficiency of a finding on an issue upon which that party has the burden of proof, that party must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d at 242; *Austin v. Weems*, 337 S.W.3d 415, 427 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We must consider and weigh all of the evidence and set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242; *Austin*, 337 S.W.3d at 427. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Arrellano v. State Farm Fire and Cas. Co.*, 191 S.W.3d 852, 856 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

As early as June 2008, the parties were negotiating a new lease, and the ADA-compliant restroom was a central part of the negotiations. In the version of the lease eventually executed, Breof agreed to install the bathroom by November 1. As of that date, no construction was completed and Breof had yet to hire a contractor to complete the work. On November 18, Breof hired a contractor and the contractor discovered that the restroom could not be built where the lease specified it would be. The parties

8

considered several alternative locations for the restroom, but by the end of December 2008, construction had still not begun. Despite this, Breof sent Advisors a bill for the full amount of January rent. Unable to reach Breof to challenge the billed amount, Advisors abandoned the premises in early January 2009. Breof has failed to demonstrate that the trial court's finding was against the great weight and preponderance of the evidence. We overrule Breof's first issue.

B

In its second issue, Breof argues that the trial court erred by effectively rescinding the lease without ordering restitution. But the trial court never explicitly invokes rescission, and Breof offers no authority for its argument that the trial court's judgment amounts to rescission. Our task is not to search for conflicts in the trial court, be they real, imagined, or conjured. *So. Life & Health Ins. Co. v. Medrano*, 698 S.W.2d 457, 460 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). Rather, it is to resolve actual and reviewable conflicts. Moreover, the court's decision not to order restitution is consistent with an intent to avoid rescission. *See Adams v. Loftin*, 1 S.W.2d 429, 430 (Tex. Civ. App.—El Paso 1927, no writ) ("Restoration is the fundamental theory on which equity acts in administering the remedy of rescission . . . ."). We overrule Breof's second issue.

C

Breof's third issue is an attack on the trial court for failing to find the lease was the product of a mutual mistake even though—Breof alleges—the facts support such a finding. In effect, Breof asks this court to reinterpret the trial court's findings to include "mutual mistake" and to then rescind the contract and order Advisors to pay back rent. We cannot and will not do so.

Whether the lease is a product of the parties' mutual mistake is an issue of fact for the trial court. *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 325–26 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Under the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or

9

ignorance of a material fact, the agreement will be avoided. *Id.* at 326. To prove a mutual mistake, however, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Id.* A mistake by one party to an agreement, where it is not induced by the other party, will not be grounds for relief. *Seymour v. Am. Engine & Grinding Co.*, 956 S.W.2d 49, 58 (Tex. App.—Houston [14th Dist.] 1996, writ denied). An appellate court may not substitute its interpretation of the evidence for the trial court's because, although appellate courts can unfind facts, they are not fact-finding courts. *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

In support of this argument, Breof points to two findings of fact made by the trial court. Finding of fact No. 4 provides: "[Breof] used a floor plan as exhibit C-1 to the [l]ease that was incorrect." No. 21 provides: "[Breof] used a floor plan as an exhibit to the [l]ease that was incorrect and did not properly show the floor plan as it existed in October 2008." Breof urges us to interpret findings 4 and 21 as evidence that both parties were mutually mistaken to think the restroom could be built where the lease indicated. The trial court, however, did not find the restroom's location to be a material term of the lease, and found that it was not the impossibility of the original location, but rather Breof's "failure to provide in a commercially reasonable manner the leased [p]remises as required by the [l]ease" that led Advisors to move out.

The evidence supports this finding. Breof made no attempt to develop serious plans with its architect during several months of negotiations, and did not hire anyone to actually install the restroom until more than two weeks after the November 1 deadline. Soon after expiration of the November 1 deadline, the contractor discovered the errors in the plans and informed Advisors. Advisors diligently considere alternative plans, including a plan that would have moved the entire office to a different floor of the office building. Breof, however, continued to offer alternative locations that required significant alteration to the existing space.

10

We see no need for additional facts and no need to "unfind" any of the trial court's findings of fact. We overrule Breof's third issue.

D

In its fourth issue, Breof complains that the trial court erred by finding that Advisors did not waive strict compliance with the lease. As in its first issue, Breof here complains of an error by the trial court and invites this court to render the opposite result. Again, we decline to do so.

Our analysis on this point begins and ends with one clause in the lease. Article 15.19 of the lease, entitled "Non-Waiver," provides: "Neither party's failure to enforce or require strict performance of any provision of this [l]ease or any of the Rules and Regulations, nor Landlord's acceptance of Rent with knowledge of a breach shall constitute a waiver of such breach or any future breach."

Although non-waiver clauses may themselves be waived, they are generally considered valid and enforceable. *A.G.E. v. Buford*, 105 S.W.3d 667, 676 (Tex. App.— Austin 2003, pet. denied). Breof has not argued that Advisors waived the non-waiver clause or that such a clause should be unenforceable in the circumstances of this case.[3] Accordingly, we overrule Breof's fourth issue. *See id.*

E

In Breof's fifth and final issue, it disputes the trial court's finding that Advisors $10,063.65 in damages.[4] Breof asks us to reverse that finding on two grounds: (1) the

---

[3] Breof urges us to consider Advisors estopped from claiming breach on the basis Advisors "accepted two months of free rent." We reject this argument. The "free rent" was an express term in the lease under Article 1.7, entitled "Adjustment to Base Rent." That article set out periodic increases in rent amounts throughout the lease term. We do not agree with Breof that Advisors is trying to have its cake and eat it too.

[4] Breof also disputes (1) the trial court's award of attorneys' fees and (2) the trial court's decision to allow Hill to keep his $17,026.66 broker's commission. Breof's sole argument regarding attorneys' fees is that the underlying judgment was in error. Because we find the underlying judgment to be correct, we affirm the trial court's award of attorneys' fees. Likewise, we affirm on the broker's-commission issue. It is well established in Texas that a broker earns his commission upon producing a person who is ready, able, and willing to take the property on the terms prescribed. *Stevens v. Karr*, 33 S.W.2d 725, 727

only evidence supporting damages was improperly admitted, and (2) the lease explicitly prohibits Breof's liability for consequential damages. Neither argument is persuasive.

The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001); *Van Heerden*, 321 S.W.3d at 875. A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Van Heerden*, 321 S.W.3d at 875. To show the trial court abused its discretion, an appellant must demonstrate: (1) the court erred in admitting the evidence; (2) the erroneously admitted evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Van Heerden*, 321 S.W.3d at 875. If there is a legitimate basis for the trial court's evidentiary ruling, the appellate court must uphold it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Van Heerden*, 321 S.W.3d at 875.

On October 27, 2010, during the trial on the merits, Advisors and Hill offered into evidence a list of the moving expenses they incurred as a result of Breof's breach. Breof objected on the grounds it had asked for—but not received—evidence of moving expenses in a request for disclosures. The trial court sustained the objection. On October 28, Advisors and Hill showed the trial court a copy of Hill's responses to requests for disclosure. Contrary to the position taken by Breof, those responses contained evidence of moving expenses. Advisors and Hill moved to supplement the trial record with the list of moving expenses, and the trial court granted the motion without objection from Breof. When an objection to evidence is properly made, the subsequent presentation of

(Tex. 1930). Accordingly, Hill earned his commission when he signed the lease on behalf of Advisors, and his right to that commission is unaffected by the date or time he deposited the check.

essentially the same evidence without objection waives any complaint regarding the admission of the evidence. *Marling v. Maillard*, 826 S.W.2d 735, 739 (Tex. App.—Houston [14th Dist.] 1992, no writ). By failing to object to the motion to supplement the record, Breof failed to preserve its objection on appeal. *See id.*

For the first time in its motion for new trial, Breof argued that the list of expenses was erroneously admitted because Advisors and Hill failed to both draw a connection between the list of moving expenses and their damages counterclaim, and show how the list was relevant. But Breof's objection was untimely and failed to preserve the complaint for appellate review. *See Millwee v. Capstar Commercial Real Estate Services, Ltd.*, 337 S.W.3d 517, 521–22 (Tex. App.—Dallas 2011, no pet.). To hold otherwise would allow Breof to agree to the list's relevance, wait for an unfavorable verdict, and then complain about the list's relevance. *See id.* at 521.

Concluding that the moving expenses were properly admitted, we turn to article 15.4 of the lease. It provides, in relevant part: "At no time shall Landlord be responsible or liable to Tenant for any lost profits, lost economic opportunities or any form of consequential damage as the result of any actual or alleged breach by Landlord of Landlord's obligations under this [l]ease." Breof argues that this article shields it from any liability for moving expenses. But because Breof raises this argument for the first time on appeal, it has waived any error. *See, e.g., Murphy v. Canion*, 797 S.W.2d 944, 950 (Tex. App.—Houston [14th Dist.] 1990, no writ).

Before this appeal, Breof mentioned article 15.4 only once—in its answer to Advisors' counterclaims. The section of the answer mentioning 15.4, entitled "Verified Defense," provides in its entirety: "Additionally and or alternatively, without waiver of any of the above and foregoing, pursuant to Tex. R. Civ. P. 93, [Breof] alleges that the [l]ease prohibits [Advisors] from suing [Breof] for certain consequential damages including lost profits or lost economic opportunities as set out in paragraph 15.4 of the [l]ease." But this general language does nothing to make the trial court aware that Breof believed the moving expenses qualified as consequential damages. *See* Tex. R. App. P.

33.1. Moreover, Breof made no effort to bring the argument to the trial court's attention. It did not mention paragraph 15.4 in the trial on the merits, in its motion for new trial, or at the hearing on its motion for new trial. "With literally hundreds and perhaps thousands of cases on their docket, it is only reasonable that we require litigants to affirmatively direct the judge's attention to their complaints so the court can make a deliberate decision." *Cecil v. Smith*, 804 S.W.2d 509, 515 (Tex. 1991) (Cornyn, J., dissenting). We overrule Breof's fifth issue.

* * *

For the foregoing reasons, we affirm the trial court's judgment.

/s/ Jeffrey V. Brown
   Justice

Panel consists of Justices Seymore, Brown, and Christopher.