**Affirmed and Memorandum Opinion filed July 26, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00162-CV

---

### IRMA G. GALVAN, Appellant

### V.

### ROSE B. GARCIA, INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF RICHARD S. BARBOZA, DECEASED, Appellee

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2009-58820**

---

## M E M O R A N D U M   O P I N I O N

In three issues, appellant Irma G. Galvan challenges the trial court's final judgment signed after the jury returned a verdict for the appellee on its wrongful eviction claim. For the reasons below, we affirm.

BACKGROUND

This dispute involves real property Galvan leased to Richard Barboza. The main issue on appeal addresses the effect of Barboza's 2005 bankruptcy on the underlying suit.

## I.     Facts

Barboza sold a tract of land in downtown Houston to Galvan for $18,500 in 1991. Galvan then leased a portion of the tract to Barboza for 99 years with an option to renew for 99 years. The lease did not require Barboza to make any payments to Galvan. Barboza operated a metal fabrication business on the leased premises.

Disputes arose between Galvan and Barboza regarding payment of property taxes and maintenance of the leased premises, and Galvan brought a forcible detainer action in justice court. The justice court signed a judgment in favor of Barboza and Galvan appealed the judgment *de novo* to the county court at law. Meanwhile, Galvan also sued Barboza in district court; the county court action was abated pending resolution of the district court proceedings.

The district court action proceeded to trial in August 2007 and the jury returned a verdict in favor of Galvan. The district court signed a final judgment on November 2, 2007, ordering Barboza to (1) pay Galvan for taxes levied against the leased premises, and (2) maintain the leased premises. The district court's final judgment awarded Galvan $2,380.01 in actual damages and $65,000 in attorney's fees.

The county court action was reinstated in October 2007. After a bench trial, the county court concluded that Galvan was entitled to immediate possession of the leased premises and issued a writ of possession. The county court's final judgment awarded Galvan $9,500 in attorney's fees.

Barboza died on October 6, 2007. The writ of possession was executed on

November 5, 2007.  Barboza's son, Ramsey, was present at the leased premises when the writ was executed.[1]  Ramsey removed equipment, inventory, and other supplies from the leased premises in compliance with the writ.

In August 2009, letters of administration were issued to Rose B. Garcia appointing her executrix of Barboza's estate.

## II.      Legal Proceedings

The first entry in the appellate record is a third amended petition filed by Garcia as administratrix of Barboza's estate; the petition was filed October 28, 2013.  The petition asserts a claim against Galvan for wrongful eviction alleging that neither the lease agreement nor applicable law permitted Galvan to evict Barboza from the leased premises.

The parties proceeded to a jury trial in December 2014.  The jury returned a verdict for Barboza's estate on the wrongful eviction claim and awarded it $99,770.02 in damages.

Galvan filed a motion for judgment notwithstanding the verdict and asserted that the estate's wrongful eviction claim was barred because Barboza rejected his lease with Galvan in his 2005 bankruptcy proceedings.  Galvan attached three exhibits to support her argument:

1.    Barboza's voluntary petition for Chapter 13 bankruptcy filed on April 22, 2005.  Barboza listed his lease with Galvan on Schedule G to the bankruptcy petition entitled "Schedule G — Executory Contracts and Unexpired Leases."

2.    Barboza's "Uniform Plan and Motion for Valuation of Collateral" dated May 5, 2007, and filed May 11, 2007.  The Uniform Plan required Barboza to assume or reject all outstanding executory contracts.

---

[1] Because he shares the same last name as his father, we refer to Ramsey by his first name to avoid confusion.

3

Paragraph 11 of the Plan provides as follows.

> **11. Executory Contracts**. Except as set forth elsewhere in this Plan or in the following sentence, all executory contracts are rejected. The following contracts are assumed.

> Barboza's lease with Galvan was not listed in the sentence after paragraph 11, nor was it listed anywhere else in Barboza's May 2007 Uniform Plan.

3. The bankruptcy court's March 14, 2006 order confirming Barboza's bankruptcy plan. The court's order states that it is "based on the plan filed 11/03/2005" listed as "DKT # 17."

Galvan's motion also asserted that her 2007 district court and county court judgments should be offset against the amount awarded to the estate in the present action. The trial court signed an order denying Galvan's motion for judgment notwithstanding the verdict. A handwritten sentence on the order states: "Since Barboza's bankruptcy was dismissed under 11 U.S.C. § 349 the lease in question re-vested in Barboza and was not rejected."

The estate filed a motion to disregard and a motion for new trial challenging the jury's damages finding. The trial court denied both motions. The trial court signed a final judgment on November 20, 2015, awarding $99,770.02 in damages in favor of the estate.

Both Galvan and the estate timely appealed. In May 2017, Galvan filed with this court a motion to show authority asserting that Garcia had died and no longer served as administratrix for the estate. On June 20, 2017, we abated the appeal to permit the estate's attorney to "respond[] to the motion to show authority with evidence of his authority to proceed on behalf of the Estate in this appeal." The estate's attorney filed letters of administration granted to Robert Barboza appointing him administrator of the estate. We reinstated the appeal on November 15, 2017.

4

Galvan asserts in her first issue that Barboza rejected the parties' lease in his Chapter 13 bankruptcy proceedings "causing its termination as a matter of law." Galvan argues that this termination bars the estate's wrongful eviction claim. In her second issue, Galvan asserts that the trial court erred by failing to offset against the estate's $99,770.02 damages award the 2007 district court and county court judgments.

The estate argues in its cross-appeal that the trial court erred in failing to disregard the jury's damages finding because the finding "is contrary to the great weight of the evidence and manifestly unjust." The estate argues that its evidence "established its damages [as] a matter of law to be $330,000."

We overrule Galvan's two issues and overrule the estate's cross-appeal. We affirm the trial court's final judgment.

## I. Barboza's Bankruptcy

Galvan asserts that the trial court erred by signing a judgment in favor of the estate on its wrongful eviction claim. Pointing to Barboza's bankruptcy proceedings, Galvan contends that the jury's liability finding is immaterial because Barboza rejected the lease.[2]

A jury answer is immaterial when the question "'should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings.'" *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 506 (Tex. 2018) (quoting *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)). We

---

[2] Galvan preserved this issue for our review by raising it in her post-verdict motion for judgment notwithstanding the verdict. *See BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 402 (Tex. 2017) ("BP preserved error on the immateriality issue by raising these concerns post-verdict in a motion for judgment in disregard, in a motion for judgment notwithstanding the verdict, and in a motion for new trial.").

review *de novo* whether a question was rendered immaterial. *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 27-28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

A Chapter 13 bankruptcy plan may provide for the "assumption, rejection, or assignment of any . . . unexpired lease of the debtor . . . [.]" 11 U.S.C.A. § 1322(b)(7) (West 2016). But a bankruptcy plan is effective only when confirmed; an unconfirmed plan does not have any legal effect. *See Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (plan confirmation "alters the status quo and fixes the rights and obligations of the parties;" "[w]hen the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike"); *see also* 8 Collier on Bankruptcy ¶ 1327.02 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("The provisions of a *confirmed* chapter 13 plan bind the debtor and all creditors." (emphasis added)).

Here, Galvan contends that Barboza rejected the parties' lease by failing to list it in his May 5, 2005 "Uniform Plan and Motion for Valuation of Collateral," the terms of which required him to assume or reject all outstanding executory contracts. Although Galvan supported her argument with reference to Barboza's Uniform Plan, she did not submit any evidence showing that this Plan was confirmed by the bankruptcy court as necessary to give it legal effect. *See Bullard*, 135 S. Ct. at 1692.

Galvan submitted as evidence the bankruptcy court's March 14, 2006 order confirming one of Barboza's bankruptcy plans, but the order expressly states that it is "based on the plan filed 11/03/2005" listed as "DKT #17." This order does not confirm the Plan forming the basis of Galvan's rejection argument, which was filed May 11, 2007, and is listed as "Document 32." Barboza's unconfirmed Uniform Plan does not suffice to show that Barboza rejected the 1991 lease.

Galvan also points to Barboza's April 2005 bankruptcy petition to support her rejection argument and notes that the petition (1) listed Barboza's "estimated assets" to be worth "$0 to $50,000;" and (2) did not list the 1991 lease as an asset on the

6

"Summary of Schedules." According to Galvan, Barboza's petition shows that he "did not believe the lease and/or the leased premises to be of any value" in contrast with the damages sought by the estate in the underlying dispute.[3]

These excerpts from Barboza's bankruptcy petition do not establish that he rejected the lease in his bankruptcy proceedings. Although the 1991 lease was not listed as an asset, the lease was included on Schedule G, entitled "Executory Contracts and Unexpired Leases." Barboza's failure to list the 1991 lease as an asset does not show that he intended to reject it altogether, particularly since the lease was listed in the "Unexpired Leases" schedule. Considered as a whole, Barboza's bankruptcy petition does not indicate that he intended to reject the 1991 lease in his bankruptcy proceedings.

We overrule Galvan's first issue.

## II. Offset

Galvan asserts in her second issue that the trial court erred by failing to offset against the estate's $99,770.02 damages award the judgments she obtained in the 2007 district court and county court proceedings. The final judgment signed in the district court action awarded Galvan $2,380.01 in actual damages and $65,000 in attorney's fees; the county court's final judgment awarded Galvan $9,500 in attorney's fees.

Mutual judgments generally are subject to offset. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 470 (Tex. 1995). "[S]etoff is an appropriate judicial response to the serious practical difficulties encountered when parties have mutual judgments, particularly when one of them is impecunious." *Id*. at 468; *see also Am. Network Leasing Corp. v. Corp. Funding-Houston, Inc.*, No. 01-00-00789-CV, 2002 WL

---

[3] In its third amended petition, the estate asserts that the lease "has a fair rental or leasehold estate value of at least $330,000.00."

31266230, at *14 (Tex. App.—Houston [1st Dist.] Oct. 10, 2002, pet. dism'd) (not designated for publication) (applying *Beadle* to offset mutual awards within single judgment).

Here, permitting Galvan to offset her 2007 judgments against the estate's $99,770.02 damages award impermissibly would bypass the statutory scheme in place to distribute an estate's assets. *See* Tex. Estates Code Ann. § 355.102 (Vernon Supp. 2017), § 355.105 (Vernon 2014).

Texas Estates Code section 355.102 classifies and provides priority of payments for claims against an estate. *See id*. § 355.102. A claimant whose claim against the estate has not been paid may "petition the court for determination of the claim at any time before the claim is barred by an applicable statute of limitations[.]" *Id*. § 355.105. Allowing Galvan to offset the 2007 judgments against the estate's recovery in this suit would circumvent these statutory procedures and priority levels.

We overrule Galvan's second issue.

## III.     The Jury's Damages Finding

The estate challenges in its cross-appeal the sufficiency of the evidence supporting the jury's $99,770.02 damages award and asserts that the finding "is contrary to the great weight of the evidence and manifestly unjust." Citing the testimony and report of its expert witness, the estate asserts that its evidence "established its damages [as] a matter of law to be $330,000."

We construe the estate's cross-appeal as challenging both the legal and factual sufficiency of the evidence supporting the judgment. *See, e.g., 2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2009, no pet.). When both the legal and factual sufficiency of the evidence are challenged, "we first review the legal sufficiency of the evidence to determine whether

8

there is any evidence of probative value to support the factfinders' decision." *Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 860 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

For a legal sufficiency or "no evidence" challenge, we determine whether the evidence would permit reasonable and fair-minded people to reach the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if reasonable factfinders could and disregard contrary evidence unless reasonable factfinders could not. *Id.* We consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Id.* at 822. "A party attacking the legal sufficiency of an adverse finding on an issue on which he has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue." *Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 63 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

To successfully challenge the factual sufficiency of the evidence supporting an adverse finding on an issue on which the appellant had the burden of proof, "the appellant must demonstrate that the adverse finding is against the great weight and preponderance of the evidence." *Spring Creek Vill. Apartments Phase V, Inc. v. Gen. Star Indem. Co.*, 261 S.W.3d 206, 216 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

When faced with conflicting evidence, the factfinder may choose which witnesses to believe and may resolve inconsistencies in any witness's favor. *Gen. Star Indem. Co.*, 261 S.W.3d at 216-17. "[T]he trier of fact is afforded considerable discretion in evaluating opinion testimony on the issue of damages." *McGalliard v.*

9

*Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

"There is no requirement that the evidence show precisely how the jury arrived at the specific amount awarded," and a jury's damages calculation need not rely solely on an expert's opinion. *Vast Contsr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "We will not disregard a jury's damage award merely because the jury's reasoning in reaching its figures is unclear." *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 403 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

We evaluate the sufficiency of the evidence in light of the instructions submitted to the jury. *Houston Mercantile Exch. Corp. v. Dailey Petroleum Corp.*, 930 S.W.2d 242, 246 (Tex. App.—Houston [14th Dist.] 1996, no writ). Here, the jury was instructed on damages as follows.

> **Question No. 3**
>
> What is the difference, if any, between the fair rental value of the Lease premises for the remainder of the Lease term and the amount of rent remaining to be paid[?]
>
> Answer in dollars and cents, if any.

This instruction comports with case law discussing the measure of damages recoverable for a wrongful eviction claim. *See Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 336 (Tex. App.—Houston [1st Dist.] 1982, no writ). In response to the question, the jury answered "$99,770.02."

Evidence at trial showed that the leased premises originally were part of a larger tract that Barboza sold to Galvan for $18,500 in 1991. Galvan then leased a portion of the tract to Barboza for 99 years with an option to renew for 99 years; the lease did not require Barboza to make any payments to Galvan.

10

The jury heard testimony from the estate's damages expert Joseph Stanfield, an independent real estate appraiser. For his valuation of the leased premises, Stanfield primarily relied on the sales comparison approach, which analyzed prior sales of similar properties in downtown Houston. Although the valuation was performed in 2010, Stanfield testified that his analysis was retroactive to 2007 when Galvan's writ of possession was served at the leased premises. Stanfield concluded that, when the writ of possession was served in 2007, the fair market value for the remainder of the 1991 lease equaled $330,000.

Galvan's counsel vigorously cross-examined Stanfield and elicited testimony regarding the following factors:

- Stanfield did not see the leased premises in 2007 and performed his retrospective valuation in 2010. Stanfield "made an assumption in the appraisal that [the leased premises were] substantially in the same condition in 2010 . . . ."

- Stanfield did not make a detailed inspection of the metal building on the leased premises.

- Stanfield did not value the leased premises with a metal building on it.

- Stanfield valued the leased premises according to its "highest and best use" as a "commercial development" combined with other properties.

- Stanfield valued the leased premises as though Barboza owned it, stating that "a 99-year lease with a — with another option for 99 . . . is analogous to having free ownership of the property."

- The leased premises had no parking.

The jury has broad discretion to award damages within the range of evidence presented at trial. *McGalliard*, 722 S.W.2d at 697; *PNS Stores, Inc.*, 484 S.W.3d at 511. Here, the evidence showed that the 1991 lease did not require Barboza to make any payments for the leased premises. *See Wood v. Kennedy*, 473 S.W.3d 329, 340 (Tex. App.—

Houston [14th Dist.] 2014, no pet.) ("price offered by the lessee and accepted by the lessor" evidence of property's fair rental value). In contrast, Stanfield testified that the estate was entitled to recover $330,000 as compensation for the fair market value for the remainder of the 1991 lease. Stanfield's conclusion was challenged on cross-examination and testimony was elicited regarding various factors that could affect the valuation.

The jury, charged with evaluating and weighing conflicting evidence, answered "$99,770.02" in response to Question No. 3. This determination falls within the range of evidence presented at trial and, as such, is not "so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust." *See Dow. Chem. Co.*, 46 S.W.3d at 242. This record does not support the estate's claim that its evidence "established its damages [as] a matter of law to be $330,000." *See Breof BNK Tex., L.P.*, 370 S.W.3d at 63.

We overrule the estate's cross-appeal challenging the sufficiency of the evidence underlying the jury's damages determination.

### CONCLUSION

We overrule Galvan's two issues on appeal and overrule the estate's cross-appeal. We affirm the trial court's November 20, 2015 final judgment.


/s/    William J. Boyce
       Justice



Panel consists of Justices Boyce, Donovan, and Jewell.

12