In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00521-CV
_____

CALVIN BROWN, Appellant

V.

CB&I, INC., MIKE SOSSMAN, IRVING GATICA, & MIKE ANDERSON,
Appellees

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-190,914

MEMORANDUM OPINION

Calvin Brown sued his former employer, CB&I, for unlawful employment practices under the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code Ann. § 21.001-.556 (West 2006 & Supp. 2013). Additionally, Brown sued two of his former supervisors, Mike Sossman and Irving Garcia (misnamed as Irving Gatica) for tortious interference and constructive fraud. Finally, in the same suit, Brown also sued a former coworker, Mike Anderson, for intentional infliction of emotional distress.

1

CB&I, Sossman, and Garcia filed a motion for summary judgment and subsequently, a motion to strike Brown's summary judgment evidence filed in opposition to their motion.[1] The trial court granted both motions. Brown contends the trial court erred in granting Appellees' motion to strike Brown's summary judgment evidence because the motion lacked merit and had not been set for hearing. Brown further contends the trial court erred in granting summary judgment in favor of CB&I, Sossman, and Garcia because material fact issues remain. We affirm the trial court's judgment.

## I. Background

Calvin Brown worked for CB&I as a structural welder for approximately two and a half years before he was laid off as part of a reduction in force on January 21, 2010. During certain periods of his employment with CB&I, Sossman and Garcia were Brown's supervisors.

The summary judgment record includes excerpts from Brown's deposition testimony. Brown testified that on July 30, 2007, he witnessed a co-worker, Mike Anderson, intentionally direct sparks from a grinder toward another co-worker. On witnessing this, Brown instructed Anderson to stop because the sparks could strike

---

[1] Anderson filed a separate motion for summary judgment, which the trial court granted upon agreement of the parties. Anderson's judgment is not at issue in this appeal.

2

his coworker in the eye. Brown then climbed to the top of a ladder to fix a weld. When Brown completed the weld, he climbed down, and witnessed a knotted rope, which Brown described in his petition as a "hangman's noose," fastened to his ladder by a binder clip. Brown admitted that he did not see Anderson tie the rope or place it on his ladder, but he believed that Anderson was responsible because another coworker told him "Anderson had something to do with the noose."

Brown's supervisor had already left the shop by the time Brown discovered the rope, so Brown informed the supervisor in the adjacent workstation and also someone from the safety department about the incident. At the beginning of his shift the next day, Brown reported the incident to his direct supervisor. Brown testified that his supervisor told him he did not think what had happened was right and he was going to investigate the matter. Later that morning, Brown was asked to write a written report about the incident and was then called into a meeting with the plant manager, someone from the safety department, and someone from human resources to discuss the incident. Brown testified that he mentioned the noose in his written report, but the noose was not specifically discussed in the meeting and he never saw it again. Brown left the meeting under the impression that CB&I took his report of the noose seriously. After CB&I's investigation of the incident, the

3

company suspended Anderson from work for three days. Approximately a week after returning from his suspension, Anderson ended his employment with CB&I.

Six months later, CB&I rehired Anderson. Shortly after being rehired, Anderson was placed in the same workstation as Brown. Brown complained to the plant manager, who immediately responded by investigating the situation and ultimately placed Anderson and Brown in separate workstations. Brown testified that the plant manager seemed concerned about the issues Brown reported and never said anything negative, inappropriate, or threatening, but seemed courteous and respectful, and listened to his concerns. Brown acknowledged that during the time he was in the same workstation as Anderson, Anderson did not threaten or make any harassing comments of any kind to him. Anderson was ultimately laid off in the fall of 2009.

Brown testified that sometime in 2009, an altercation occurred between Sossman's brother-in-law, a CB&I employee, and an African American CB&I employee. According to Brown, "someone said that [Sossman's brother-in-law] had called [another employee] the 'N' word[]" and that the African American employee was later terminated because of the altercation. Brown testified that his name was somehow included in this incident, and Sossman and Garcia approached him in his work area and one of them said, "I heard you had called me a racist."

4

Brown denied calling either man a racist but said he did not think it was right for CB&I to fire the African American employee and CB&I should have allowed the investigation to continue. On January 21, 2010, CB&I laid off Brown. After Brown was laid off, he filed this suit.

## II. Exclusion of Summary Judgment Evidence

Prominent among Brown's complaints is his contention that the trial court erred in failing to properly consider his summary judgment evidence. In issue three, Brown contends that the trial court erred in striking his summary judgment evidence without an oral hearing. Brown argues that a trial court cannot grant a motion or issue an order on a motion that was not first heard by the trial court. Appellees contend that Brown did not timely appeal the trial court's order striking his summary judgment evidence. Essentially, they argue that Brown limited his appeal by specifically listing in the notice of appeal only his challenge to the trial court's order granting summary judgment.

An appellant is not required to specify issues in a general notice of appeal. *See* Tex. R. App. P. 25.1(d). Moreover, nothing in Rule 25.1 limits the issues that Brown, having properly invoked our jurisdiction, may raise on appeal. *See Anderson v. Long*, 118 S.W.3d 806, 809-10 (Tex. App.—Fort Worth 2003, no pet.) (noting the plaintiff whose notice indicated appeal from plea to the jurisdiction

5

could also argue on appeal the summary judgment); *see also Gunnerman v. Basic Capital Mgmt. Inc.*, 106 S.W.3d 821, 824-25 (Tex. App.—Dallas 2003, pet. denied) (citing Rule 25.1 and holding appeal from final judgment encompassed earlier interlocutory orders). We conclude that Brown's appeal of the summary judgment encompassed the order on the motion to strike and Brown is not precluded from challenging the motion to strike. Accordingly, we address this issue.

Appellees filed their motion for summary judgment, which they later amended. As evidence, Appellees attached to their motion excerpts from Brown's deposition transcript, the affidavit of Paris Gill, and Brown's Charge of Discrimination filed with the EEOC. Brown responded to Appellees' motion and attached eleven exhibits as evidence. In his response to the motion for summary judgment, Brown did not contest CB&I's evidence or make any objections. However, CB&I filed a motion to strike Brown's summary judgment evidence, objecting specifically to deficiencies in ten of Brown's eleven exhibits. Brown did not file a written response to CB&I's motion to strike or otherwise amend his response. The trial court sustained CB&I's objections and reduced its rulings to a written order.

6

Brown argues that because Appellees did not set and obtain a separate hearing on the motion to strike, he was denied due process of law. Appellees respond that the parties argued and the trial court considered their objections to the summary judgment evidence during the hearing on their motion for summary judgment. The reporter's record of the summary judgment hearing is not a part of the appellate record. The trial court's order sustaining Appellee's motion to strike states, "After reviewing said Motion, Plaintiff's response, if any, and the other pleadings and evidence on file and hearing oral argument of counsel, if any, the Court is of the opinion that Defendants' Motion should be granted[.]" While the court's order does not state definitively whether it heard oral argument on this issue, there is no evidence in the record to support that it did not hear these arguments at the motion for summary judgment hearing as Appellees' contend. We find no support in the Texas Rules of Civil Procedure or case law for Brown's contention that the trial court was required to hold a separate hearing, apart from the summary judgment hearing, on Appellees' objections to Brown's summary judgment evidence. *See generally* Tex. R. Civ. P. 166a(f); *see also Green v. Cypress Fairbanks Med. Ctr. Hosp.*, No. 04-01-00434-CV, 2003 WL 475846, at *1 (Tex. App.—San Antonio Feb. 26, 2003, no pet.) (mem. op.).

7

Brown further asserts that the trial court erred in sustaining CB&I's objections on their merit. In his appellate brief, Brown responds to each of CB&I's objections. However, there is nothing in the record showing that Brown filed a response to CB&I's motion to strike, objected to the court's ruling on CB&I's motion to strike, or in any way made his arguments known to the trial court. Generally, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion[.]" Tex. R. App. P. 33.1(a)(1). We review a trial court's decision to sustain objections to summary judgment evidence for an abuse of discretion. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.). Brown bears the burden to bring forth a record that demonstrates the trial court abused its discretion when it sustained Appellees' objections to the summary judgment evidence. *See Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). When a party fails to object to a trial court's ruling sustaining objections to his summary judgment evidence, he waives the right to challenge that ruling on appeal even if his objections to the trial court's ruling appear meritorious. *Id.* In this case, we do not know what arguments, if any, Brown presented to the trial court at the summary judgment hearing. By failing to object in writing to the motion to strike in the trial court and, without the

8

reporter's record of the summary judgment hearing evidencing any objections to the trial court at the hearing, Brown has waived the right to complain on appeal about the trial court's ruling. *See* Tex. R. App. P. 33.1(a)(1); *see also Cantu*, 195 S.W.3d at 871. We overrule Brown's third issue and affirm the trial court's order on Appellees' motion to strike Brown's summary judgment evidence.

### III. Traditional Summary Judgment Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a summary judgment motion, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*,

690 S.W.2d 546, 548-49 (Tex. 1985). We must indulge every reasonable inference in favor of the non-movant and resolve any doubts in his favor. *Id*. at 549.

## IV. CB&I's Summary Judgment

Brown alleged two causes of action against CB&I. He alleged CB&I subjected him to a hostile work environment and that CB&I terminated him in retaliation for reporting the incident that forms the basis of his hostile work environment claim. CB&I argued it was entitled to summary judgment because there was no genuine issue of disputed material fact regarding either claim.

### A. Brown's Hostile Work Environment Claim Was Not Preserved by a Timely Administrative Complaint

Brown brought his claim for hostile work environment under the Texas Labor Code. CB&I argues that Brown's hostile work environment claim is untimely because he filed it more than 180 days after the alleged unlawful employment practice occurred.

Under the TCHRA, an employer may not discriminate against or discharge an employee based on "race, color, disability, religion, sex, national origin, or age[.]" Tex. Lab. Code Ann. § 21.051(a). [2] Texas law requires that an individual

---

[2] The TCHRA is modeled after federal civil rights law. Tex. Lab. Code Ann. § 21.001(1). Thus, in interpreting the TCHRA, we look also to analogous federal precedence for guidance. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

file a complaint of an unlawful employment practice with the Equal Employment Opportunity Commission ("EEOC") or the Texas Commission on Human Rights ("TCHR") within 180 days after the alleged unlawful employment practice occurred. Tex. Lab. Code Ann. §§ 21.201, 21.202(a). The 180-day limitations period commences on the date the alleged unlawful employment practice occurred. *See* Tex. Lab. Code Ann. § 21.202; *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492-93 (Tex. 1996). While the doctrine of continuing violation relieves some claimants from proving that all of the alleged acts of discrimination occurred within the filing period, it is only applicable if a claimant can show that the act is part of "a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997); *see also Lamar Univ. v. Jordan*, No. 09-10-00292-CV, 2011 WL 550089, at *4 (Tex. App.—Beaumont Feb. 17, 2011, no pet.) (mem. op.). To take advantage of this doctrine, a plaintiff must show "an organized scheme leading to and including a present violation[.]" *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). It must be the cumulative effect of the discriminatory practices together that gives rise to the cause of action, not any one discrete occurrence. *Id.*

"A hostile-work-environment claim entails ongoing harassment, based on the plaintiff's protected characteristic, so sufficiently severe or pervasive that it has

11

altered the conditions of employment and created an abusive working environment." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 324 (Tex. App.—Texarkana 2008, pet. denied). Because a claim of this nature involves a series of separate acts that collectively constitute an unlawful practice, it is not detrimental to the plaintiff's case if some of those acts fall outside the statutory time period, so long as one of the separate acts forming the hostile environment occurred within 180 days before the charge was filed. *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)); *see, e.g., Abrams v. Am. Airlines Inc.*, 302 F. App'x 242 (5th Cir. 2008) (employee's hostile work environment claim was time-barred where employee failed to present evidence that any of the discriminatory acts occurred within the statutory timeframe).

Brown filed his Charge of Discrimination on April 5, 2010. While Brown did not mark the "[continuing action]" box on his Charge, he did note that the discrimination took place as early as July 2007 and as late as January 2010. In his Charge, Brown complained of an incident "involving a hangman's noose on the jobsite in July of 2007[.]" Brown's allegation of the July 2007 incident predates the filing of his Charge by almost three years, long after the 180-day deadline for filing had expired.

12

In response to CB&I's motion for summary judgment, Brown argued that the noose was not the only incident of harassment. Brown contends it was also harassing for CB&I to reassign Brown to work with Anderson upon his rehire after the noose incident and for CB&I to fail to assign him a permanent work station. However, these later alleged incidents also fall outside of the 180-day window for filing. The work assignment with Anderson that Brown complains of occurred in January 2008, as did the transfer to another workstation. Without addressing whether these acts could constitute a continuing violation or whether they could reasonably grow out of the allegation in Brown's Charge, these acts occurred more than two years before Brown filed his complaint and are, therefore, outside of the 180-day limitations period. The only alleged incident that occurred within the 180-day timeframe was Brown's termination, which occurred January 21, 2010. However, "[t]ermination does not qualify as a predicate act supporting the hostile-work-environment claim; termination is not itself harassing conduct." *Bartosh*, 259 S.W.3d at 324. On this record, there is no evidence of any alleged discriminatory act occurring during the 180-day limitations period; therefore, Brown's claim of hostile work environment is untimely. The trial court did not err in granting summary judgment in favor of CB&I on Brown's hostile work environment claims.

**B. Brown's Retaliation Claims**

Brown argues that his claims of retaliation against CB&I arise from CB&I's repetitive reassignment of Anderson to work with Brown after the noose incident, CB&I's act of removing Brown from his permanent workstation after he complained of Anderson's misconduct, CB&I's act of continually reassigning Brown to different workstations, and CB&I's act of terminating Brown.

**1. Brown's Transfer and Assignment to Work with Anderson**

Brown argues that CB&I's assignment of Anderson to work in the same area as Brown was an act of retaliation. Brown also argues that CB&I retaliated against him by transferring him to a new workstation and denying him a permanent workstation.

Brown alleges that Anderson was assigned to work in the same area where he worked in January 2008. Brown testified that he complained to the plant manager about the assignment and, as a result, the plant manager transferred Brown in January 2008 to a different area instead of transferring Anderson. Brown further testified that from January 2008 until he was laid off in January 2010, he never had to work around Anderson again. Since Brown filed his Charge of Discrimination on April 5, 2010, he failed to file his charge within 180 days of

14

either of these alleged acts of retaliation; therefore, his retaliation claims based on these acts are untimely.

**2. Brown's Termination**

In addition to the claims discussed above, in his Charge of Discrimination, Brown also alleged that CB&I terminated him in retaliation for reporting and opposing the incident involving the noose. Because Brown was laid off in January 2010, his April 2010 Charge was timely as to the termination allegation. We therefore address the substance of that allegation below.

The TCHRA provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: 1) opposes a discriminatory practice; 2) makes or files a charge; 3) files a complaint; or 4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055. In the absence of direct evidence of discrimination, the plaintiff must make a prima facie case of discrimination under the *McDonnell Douglas* burden shifting analysis. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). To present a prima facie case under this analysis, a plaintiff must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and

(3) there is a causal link between the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). If a plaintiff meets the burden to establish a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory purpose for the adverse employment action. *Pineda*, 360 F.3d at 487 (quoting *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). If the defendant is able to demonstrate a legitimate, nondiscriminatory purpose for the action, then the burden shifts back to the plaintiff to present proof that the stated reason was pretextual. *Id.*; *see also Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Retaliation claims are subject to the "but for" causation standard; therefore, even when a plaintiff shows discrimination or retaliation was a "motivating factor" for the employer's action, a plaintiff cannot defeat the employer's motion for summary judgment without challenging the employer's nonretaliatory reason for the employment action. *See Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 497 & n.11 (Tex. App.—Amarillo 2009, pet. denied) (discussing the causation requirement for

16

a retaliation claim and explaining that a plaintiff in a retaliation claim must satisfy the "but for" causation standard).

Brown contends that he raised a genuine issue of material fact sufficient to defeat summary judgment concerning whether CB&I terminated his employment based on pretext, that is, CB&I's real reason was to retaliate against him for reporting discrimination. Even assuming that Brown raised a fact issue on each element of a prima facie case for discrimination or retaliation, CB&I met its burden to articulate a legitimate nondiscriminatory reason for Brown's termination. *See Quantum Chem. Corp.*, 47 S.W.3d at 477; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (explaining that employer's burden is one of production, not persuasion). CB&I presented evidence that the economic downturn took a substantial toll on the employees at its Island Park facility. In 2009, CB&I was forced to lay off over two hundred and ninety-three employees at that facility. CB&I also produced evidence that it had to lay off approximately fifty structural welders between the time Brown was hired in May of 2007 and laid off in January of 2010. The record evidence shows that when CB&I laid off Brown, it also laid off nine other structural welders and eight other non-welder employees in the structural welding department. Additional evidence

17

reveals that on May 18, 2010, CB&I only employed five structural welders at the Island Park facility, all of whom were members of a racially protected class.

While Brown argues that CB&I's reduction in force was merely pretextual, he presented no evidence to support his claim. In an attempt to rebut CB&I's nonretaliatory, nondiscriminatory reason for laying off Brown, Brown cites to portions of his own deposition transcript, which he notes was attached to Mike Anderson's Motion for Summary Judgment. However, neither Anderson's motion nor its exhibits are part of the summary judgment record.[3] Brown contends that he testified that the Caucasian employees, whom CB&I did not lay off, were not as qualified as Brown and had less seniority. Brown cites to no evidence in the record to support this claim and we find none. He also argues that he was the only discharged employee who complained of racial harassment and retaliation, but offers no evidence to prove this assertion. He argues that he was terminated because he complained about the noose, not because of a reduction in force. In support of this claim, he cites to a portion of his transcript that is not included in the appellate record. In any case, these allegations alone would be insufficient to prove that CB&I's reason for terminating Brown was pretextual; therefore, they

---

[3] We note that while there seems to be some overlap between the citations to Brown's deposition cited in support of Anderson's motion and the citations to Brown's deposition cited in the other parties' motions, those citations lend no support to Brown's contention that CB&I's reduction in force was pretextual.

18

are insufficient to preclude summary judgment. *See Ptomey*, 277 S.W.3d at 497 (concluding proof that amounted to nothing more than speculation, personal belief, and insupportable inferences were insufficient to preclude summary judgment).

To preclude summary judgment, Brown needed to raise a genuine issue of material fact as to CB&I's articulated nonretaliatory justification. *See McCoy*, 492 F.3d at 557-58. Brown failed to raise a genuine issue of material fact on the question of whether the nonretaliatory reason CB&I articulated for Brown's termination—reduction in force— was pretextual. For these reasons, the trial court did not err in granting summary judgment in favor of CB&I on Brown's retaliation claims.

Finding no error in the trial court's summary judgment in favor of CB&I on all of Brown's claims, we overrule Brown's first issue, and affirm the trial court's judgment in favor of CB&I.

## V. Sossman & Garcia's Summary Judgment

Brown alleges two causes of action against Sossman and Garcia. He alleges that Sossman and Garcia tortiously interfered with his employment with CB&I. Brown also alleges a cause of action against Sossman and Garcia for constructive fraud.

**A. Claim for Tortious Interference**

Brown appeals the trial court's judgment against him on his tortious interference claim against Sossman and Garcia. Specifically, Brown argues that Sossman and Garcia "set up Brown to fire him in retaliation for his complaints." He claims that Sossman and Garcia made false statements against him and then, used those statements to have him fired.

The nature of a tortious interference claim is such that "a person must be a stranger to a contract to tortiously interfere with it[.]" *Morgan Stanley & Co., v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997); *Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 346 (Tex. App.—Beaumont 2010, pet. denied). Generally, a party to a contract cannot tortiously interfere with its own contract. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Schoellkopf v. Pledger*, 778 S.W.2d 897, 902 (Tex. App.—Dallas 1989, writ denied). By extension, "a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract." *Morgan Stanley*, 958 S.W.2d at 180; *see also John Masek Corp. v. Davis*, 848 S.W.2d 170, 175 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("It is well established an agent cannot be liable for tortious interference with its principal's contracts.").

The summary judgment evidence in the record establishes conclusively that Sossman and Garcia were at all relevant times employees of CB&I, and employed in supervisorial roles over Brown. There is no argument or evidence in the record that either Sossman or Garcia acted outside their scope of employment. As agents of CB&I, Sossman and Garcia could not interfere with Brown's employment relationship with CB&I. *See Hussong*, 896 S.W.2d at 326-27. The trial court did not err in granting summary judgment in favor of Sossman and Garcia on Brown's tortious interference claims.

**B. Claim for Constructive Fraud**

Additionally, Brown appeals the trial court's judgment in favor of Sossman and Garcia on his constructive fraud claims. Brown argues that because Sossman and Garcia were supervisors over Brown, they owed him a legal or equitable duty that they breached by "falsely accusing Brown of making comments that were defamatory per se and also were disruptive of the work environment."

Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied); *see Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). The existence of a fiduciary duty is a question of law for the court to

21

decide. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). The special nature of some relationships warrants the imposition of fiduciary duties on a party. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). The term "fiduciary" generally applies "to any person who occupies a position of peculiar confidence towards another[,]" "refers to integrity and fidelity[,]" and "contemplates fair dealing and good faith[.]" *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512 (1942). A fiduciary duty arises from two types of fiduciary relationships. The first is formal fiduciary relationships, including attorney-client, principal-agent, partners, and joint venturer relationships. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The principal-agent relationship generally provides that an agent owes his principal a fiduciary duty. *See Kinzbach Tool*, 160 S.W.2d at 513. The second type is an informal fiduciary relationship. The Texas Supreme Court explained that "[b]ecause not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law recognizes the existence of confidential relationships in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru*

22

*of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002). This informal fiduciary relationship arises from "moral, social, domestic, or purely personal" relationships of trust and confidence. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997).

Brown claims that an informal fiduciary relationship existed between him, Sossman, and Garcia. He contends he had no choice but to rely upon and put his trust and confidence in Sossman and Garcia, as his supervisors. However, in this case, the undisputed evidence shows that the only relationship that existed between Brown and his supervisors, Sossman and Garcia, was that of employer-employee. There is no evidence to suggest that anything occurred between the parties that created a moral, social, or personal relationship of trust between them. Without the existence of a fiduciary duty, Brown cannot prove a claim for constructive fraud. *See Tex. Integrated Conveyor*, 300 S.W.3d at 366. We conclude the trial court did not err in granting summary judgment in favor of Sossman and Garcia on Brown's constructive fraud claims. We overrule Brown's second issue.

Having overruled all of Brown's appellate issues, we affirm the trial court's judgments.

23

AFFIRMED.

                               _____

                                   CHARLES KREGER
                                      Justice

Submitted on July 1, 2013
Opinion Delivered January 16, 2014

Before McKeithen, C.J., Kreger, and Horton, JJ.

24