BRILLHART v. BEEVER.　(No. 1231.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 10, 1917. On the Merits, Oct. 31, 1917. Rehearing Denied Nov. 28, 1917.)

1. APPEAL AND ERROR ☞409 — CITATION IN ERROR—DEFECTS—QUASHING.

Under Rev. St. 1911, art. 2091, providing that the citation in error shall be made returnable within 10 days, if defendant in error resides in the county, or 20 days, if he resides out of the county, the error of the clerk, in making the citation returnable in 30 days, does not require the quashing of the citation.

2. APPEAL AND ERROR ☞429 — CITATION IN ERROR—DEFECTS—WAIVER.

Defendant in error waived any right to abate the citation in error because of a mistake in designating the return day by moving to strike out the statement of facts and dismiss the proceeding in error.

3. APPEAL AND ERROR ☞14(1) — SUCCESSIVE PROCEEDINGS.

A proceeding in error will not be dismissed because it is prosecuted after the dismissal of an appeal from the same judgment, where the judgment was not affirmed on the appeal.

4. APPEAL AND ERROR ☞655(3) — RECORD — AUTHENTICATION.

A statement of facts, though not bearing the file mark of the clerk of the lower court, will not be stricken out, where a certificate of the clerk is attached, certifying that it is an exact copy and a duplicate original of the statement of facts filed in his office.

5. APPEAL AND ERROR ☞564(2)—STATEMENT OF FACTS—TIME FOR FILING.

A statement of facts filed within 12 months is in time, where the case is brought to the appellate court for review by writ of error.

### On the Merits.

6. SPECIFIC PERFORMANCE ☞31 — CONTRACTS ENFORCEABLE—INCOMPLETE CONTRACTS.

To be specifically enforced, a contract must show a concluded agreement, and if it is reasonably doubtful whether what passed was only treaty, however it may approach the confines of an agreement, it will not be specifically enforced.

7. VENDOR AND PURCHASER ☞28—CONTRACTS —OFFER AND ACCEPTANCE.

In reply to a letter from plaintiff, defendant stated that he would make plaintiff a proposal respecting a sale of land, defendant to assume an amount due the state, pay $1,000 in cash, and give his notes for $4,000, $1,000 to be payable annually, with interest at 6 per centum, and that he would go into further agreement with plaintiff, if this interested him. Plaintiff replied that he would buy the land at defendant's offer, and would pay $1,000 cash when deed and abstract were satisfactory, and give notes payable annually, and that, if defendant cared for any information in regard to his ability to pay, he might write a certain person. Defendant replied that plaintiff apparently expected a good abstract and deed, and to give his notes, and that he could not do this. In answer, plaintiff wrote that he did not ask defendant to take his personal notes, that it was customary to furnish an abstract of title, that practically all school land was transferred with vendor's lien notes against the land, but that, if defendant was afraid of notes against the land, he might give a bond for deed. *Held*, that defendant's offer was not intended to conclude an agreement, and could not be converted into a contract by acceptance, but was merely a proposal to enter into further negotiations, and the subsequent correspondence showed that the parties never reached a common understanding respecting the time of payment of the amount to be paid in cash, or the manner in which the deferred payments should be secured.

8. CONTRACTS ☞1 — REQUISITES — TERMS OF AGREEMENT.

An agreement, to constitute a complete contract, must comprise all the terms which the parties intended to introduce into the agreement.

9. CONTRACTS ☞24—ACCEPTANCE OF OFFER— VARIANCE FROM OFFER.

An acceptance varying from the offer is in effect a rejection and a counter proposal, and the offer thereupon lapses as in case of express rejection.

10. CUSTOMS AND USAGES ☞10—OPERATION AND EFFECT.

A custom to give an abstract of title to land upon a sale does not amount to a custom that the deed and abstract must be satisfactory to the proposed purchaser.

11. CUSTOMS AND USAGES ☞14—EXCLUSION BY EXPRESS CONTRACT.

Where, in correspondence respecting a sale of land, the purchaser expressly stipulated that a deed and abstract must be to his satisfaction, the matter would have been controlled by the contract, if made, and not by a custom to give abstracts of title.

Error from District Court, Hemphill County; W. R. Ewing, Judge.

Action by G. C. Brillhart against J. C. Beever. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank Willis, of Canadian, R. T. Correll, of Ochiltree, and F. P. Works, of Amarillo, for plaintiff in error. E. C. Gray, of Higgins, for defendant in error.

On Motion to Quash Citation, Strike Statement of Facts, and Dismiss Writ of Error.

HALL, J. [1, 2] Defendant in error moves this court to quash the citation in error because the sheriff is commanded to return the process within 30 days. Article 2091, R. S., provides that the citation in error shall be made returnable within 10 days from the date of its issuance if the defendant in error resides in the county, and in within 20 days if he resides out of the county. The error of the clerk in designating the return day is not such error as requires us to quash the citation. The purpose of the citation is to bring the defendant in error into this court, and it would be a technical ruling to grant the motion in this instance. It is held in Hall v. La Salle County, 46 S. W. 863, that an appearance by defendant in error to dismiss the writ of error upon other grounds is a waiver of clerical defects in a citation. By moving this court to strike out the statement of facts and to dismiss the writ of error proceeding, defendant in error has clearly waived his right to abate the citation.

[3] Defendant in error insists that we should dismiss the proceeding because it is prosecuted after an appeal from the same judgment had been dismissed by this court at a previous term. In Schonfield v. Turner (Sup.) 6 S. W. 628, the court said that the abandonment of the appeal deprived the plaintiff in error of no right, and that the

case stood as if no appeal had been taken, since defendant in error had made no effort to affirm the judgment at the previous term. This holding is cited with approval in Texas, etc., Ry. Co. v. Hare, 4 Tex. Civ. App. 18, 23 S. W. 42 (affirmed in 93 Tex. 651). In the Hare Case, as in this case, the appeal was dismissed for want of prosecution.

[4, 5] The ground of the motion upon which defendant in error seeks to strike out the statement of facts must also be overruled. It appears that plaintiff in error has used the identical statement of facts which was sent to this court at the former term when an appeal was prosecuted from the judgment of the lower court, and the clerk of the lower court failed to place his file mark upon it. It appears by the certificate of the clerk attached to the copy of the statement of facts that it is an exact copy and a duplicate original of the statement of facts filed in his office in the court below. We think this is sufficient upon that point. M., K. & T. Ry. Co. v. Waggoner, 102 Tex. 260, 115 S. W. 1172. While the copy now with the clerk of the lower court was filed there more than 90 days after the appeal was perfected, for the purposes of this proceeding it is filed here in time. It seems to be the settled practice that a statement of facts filed within 12 months is in time where the case is brought to the appellate court for review by writ of error. McLane v. Haydon, 178 S. W. 1197; Louisiana-Rio Grande Canal Co. v. Quinn, 160 S. W. 151.

The motion is in all things overruled.

### On the Merits.

HUFF, C. J. Plaintiff in error, Brillhart, sued the defendant in error, Beever, to specifically perform a contract of sale alleged to have been executed by certain correspondence between the two parties, for the east 480 acres of land out of survey No. 1, block z, in Ochiltree county, and in the alternative for damages. The alleged contract is based upon the following letters:

"Gray, Okla., December 27, 1915.

"Mr. J. C. Beever, Coulterville, Ill.—Dear Sir: Am inclosing you check for $75.00 for rent on east 100 acres of land for year of 1915. I understand you have this land on market for sale. I might possibly be able to do some business with you on this land. If $5,000.00 will interest you on this land, and terms will suit me, I think we can do business. I would not care to pay over $1,000.00 down on same, and balance in payments of $1,000.00 per year at 6 per cent. interest, interest payable annually. You understand in me buying this land it will be direct from you and you will have no comm. to pay to any one. Shall be glad to hear from you.

"Yours truly,        G. C. Brillhart,
      "Gray, Okla., R. 4, Box. 55."

"Coulterville, Illinois, Jan. 5, 1916.

"Mr. G. C. Brillhart, Gray, Oklahoma—Dear Sir: Received your letter with check for seventy-five dollars a few days ago, in regard to offer on my land. I cannot accept your price, the amount cash you offer is hardly enough to justify me in selling, and the 6% interest on deferred payments is low; however, I will make

proposal on your terms, you assume the seven hundred dollars $700.00 due the state on this land at 3% interest payable annually, and give me one thousand dollars $1,000.00 cash, and I will take your notes for four thousand $4,000.00, one thousand payable annually, with interest at 6% on deferred payments, all interest payable annually; will go into further agreement with you if this interest you let me know, this is the best I can do on a thousand dollars cash.

"Very respectfully,        J. C. Beever."

"Gray, Okla., Jan. 13, 1916.

"Mr. J. C. Beever, Coulterville, Ill.—Dear Sir: Your letter of Jan. 5th had been rec'd. I will buy land at your offer. I will arrange the $700.-00 due the state of Texas. Will pay you the $1,000.00 cash when deed and abstract is satisfactory to me. Will give you the four notes on land for $1,000.00 each, payable annually and drawing 6% interest from date, and interest payable annually. I shall be glad to get this fixed up in a short time as I would like to go to farming land at once. If you care to ask any information in regard to me or my ability in paying for place you may write Mr. Barnett, or any other acquaintance whom you may have in this country. Please let me hear from you at an early date.

"Yours truly,        G. C. Brillhart."

"Gray, Okla., Feb. 3, 1916.

"Mr. J. C. Beever, Coulterville, Ill.—Dear Sir: I wrote you Jan. 13th, stating that I would buy your land at your price. I have not heard from you since. I have turned down deals on other land waiting to hear from you. Please write at once. Would like to get this matter straightened up at once. Let me hear from you.

"Yours truly,        G. C. Brillhart."

"Feb. 7, 1916.

"G. C. Brillhart—Dear Sir: I have had charge of a drug store the past month of a man that had died and settling up his business looked like that I could not tend to my own business. In regard to my land, the way you wrote you expected me to give you a good abstract and deed, and me take your notes for the balance. I could not do that. I talked to a lawyer here and he told me I had better not do anything unless I was on the ground. So you do not need to hold off any on my account if you have other land in view. I have sold some property here and may not sell land now. However, I am coming down about the first of April and may see you.

"Respy.,        J. C. Beever."

"Gray, Okla., Feb. 11, 1916.

"Mr. J. C. Beever, Coulterville, Ill.—Dear Sir: Your letter of the 7th has been rec'd. I note what you say in regard to land. You are under the wrong impression in regard to deed and abstract. I did not ask you to take my personal notes in buying the land. You understand that it is customary and only a matter of business that an abstract of title be furnished when land is sold in this state, or any other in the United States. In regard to deed, practically all school land in this state is transferred when it is sold on terms with vendor's lien notes against land. However, if you are afraid of notes against land you may give bond for deed. Mr. Beever, you have priced this land to me and I have bought it fair and square at your own price. You also have been recommended to me to be a man who was absolutely good, and would do whatever you said you would. I have sold stuff at a sacrifice in order to raise the $1,000.00 to pay you. I am also ready to put my teams to work on land as soon as we get some moisture; it is too dry here at the time to do any work in the field. Mr. Beever, if you prefer to come down here to close up this deal I will pay you R. R. fare one way, or I will come

back there if you prefer, if you will pay my fare one way. I am inclosing you check for $250.00 for forfeit on place to show you that I mean business.

"Please do not delay this matter. Answer my letter at once.

"Yours truly,　　　　G. C. Brillhart."

"Coulterville, Ill., Feby. 14, 1916. "Mr. G. C. Brillhart, Gray, Okla.—Dear Sir: Inclosed find check I received from you to-day. I gave you to understand in my letter of Feby. 7 that the deal was off. If you had inclosed check with your letter of Jan. 13, 1916, I would have accepted it. But when you did not send anything with your first letter I did not consider it an offer. If there is any railroads built down there I want to settle on my land myself. All I have is tied up in that land and I have worked hard for it all my life. I saw in St. Louis papers that there was prospects of a railroad, and if there is I want to move out there.

"Respy. yours,　　　　J. O. Beever."

Also the following excerpt from a letter from Beever to Barnett, dated Coulterville, Ill., Jan. 31, 1916, who appears to have been looking after the land for defendant in error or was his agent:

"Geo., I got a letter from Brillhart the last of Dec., 1915. He offered me $5,000.00 for my land. On the 5th of January I wrote him that if he would assume the $700.00 due the state and give me $5,000.00 I would sell. About two days after I got your last letter before this one I got another letter from him accepting my offer. He talked about wanting a good deed and abstract, so I saw a lawyer, and he told me not to do it, so it just stands that way. I have not answered his letter yet."

The offer of the defendant to sell the land is contained in his letter of date January 5, 1916, which it is asserted plaintiff in error accepted. In this letter the price for the land is stated and the terms upon which the payments must be made. This, of course, was an important feature of the contract which was to be entered into, but the letter concludes: "Will go into further agreement with you if this interests you. Let me know."

[6] A contract which may be specifically enforced must show a concluded agreement. If it rests reasonably doubtful what passed was only treaty, however it may approach the confines of an agreement, the court ought not to specifically perform what is doubtful as an agreement.

[7, 8] It is apparent from the letter that the defendant did not intend to conclude an agreement. He states if plaintiff would agree to assume $700 due the state, pay $1,000 cash, and the balance, $4,000, in $1,000 annual payments, he would then enter into further agreement. If the proposition as made interested plaintiff, defendant would "go into further agreement." It is not made certain or probable that defendant agreed to conclude the agreement when plaintiff should signify his interest or willingness to buy the land at the price stated, but further agreement must be entered into.

"An offer, to constitute a contract, must be one which is intended of itself to create legal relations on acceptance, and, if it is an offer merely to open negotiations which may ultimately result in a contract, it is not binding. An invita-tion to enter into negotiations is not an offer which can be converted into a contract by acceptance. Such a proposal may not be an offer to contract, but merely a suggestion to induce offers by others." Ruling Case Law, Contracts, vol. 6, § 23, p. 600; Page on Contracts, vol. 1, § 26; Cherokee Tanning, etc., v. Western Union Tel. Co., 143 N. C. 376, 55 S. E. 277, 118 Am. St. Rep. 806.

So long as the negotiations are incomplete, there is no contract. An agreement to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement. It is a contradiction of terms to say that a man enters into an agreement until the terms of that agreement are settled. In Lyman v. Robinson, 14 Allen (Mass.) 242, it is said:

"A valid contract may doubtless be made by correspondence, but care should always be taken not to construe as an agreement letters which the parties intended as preliminary negotiation. The question in such cases always is: Did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound? The circumstance that the parties do intend a subsequent agreement to be made is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.' Lord Cranworth, in Ridgeway v. Wharton, 6 H. L. Cas. 268."

As illustrating this view, we think Watkins v. Campbell, 100 Tex. 542, 101 S. W. 1078, is in point, though the rule is there applied to the question of agency. The letter written by plaintiff, dated January 13th, in answer to defendant's offer, we think evidence that plaintiff understood that the parties did not mean to contract by the correspondence. He did not agree to pay $1,000 cash, but "will pay you the $1,000 cash when deed and abstract is satisfactory to me." What would satisfy him? And how long would it take to satisfy him? This must be left to further negotiation. He further shows in the letter that he regarded it as only a negotiation. Therein he referred defendant to other parties for information "in regard to me or my ability in paying for place." If the matter was concluded and an agreement consummated, there was no necessity for further investigation as to plaintiff's ability to pay. This suggestion as to ability to pay had the effect to induce the defendant to believe plaintiff's personal obligation was to be accepted by him for the land. This is evidenced by the defendant's letter dated February 7th, in which he says: "The way you write you expect me to give you a good abstract and deed and me take your notes for the balance." Clearly, these parties up to this time had not reached an understanding. The defendant evidently was advised by his attorneys, and he also feared that a vendor's lien could not be taken against school land. The plaintiff perceived from his letter this was his understanding, as shown by defendant's letter of date February 11, 1916, wherein he proposed that in-

stead of a deed that defendant give bond for deed. All the facts show simply negotiation and that no contract was consummated. Whatever the defendant's reasons were for not consummating the contract, the letters do not show an agreement in which the parties had reached a common understanding of all its terms. They had agreed on the price, but had not agreed when the cash should be paid. Plaintiff wanted it when the deed and abstract were satisfactory to him. The personal notes of plaintiff for the deferred payments were not satisfactory to the defendant, and they had not reached an agreement how the deferred payments should be secured—whether by vendor's lien or by bond for title. The defendant had stated he was unwilling to execute deed and give abstract satisfactory to plaintiff. Plaintiff made a counter suggestion that the furnishing of abstract was customary, and that vendors' liens could be taken against school land, but he suggested he would take a bond for title. This was a different proposition. "It seems to us the parties were negotiating, and that their minds did not meet in a binding contract on the part of the seller to sell and the buyer to buy in præsenti and unconditionally." Foster v. New York, etc., 2 Tex. Civ. App. 505, 22 S. W. 260; Flomerfelt v. Hume, 11 Tex. Civ. App. 30, 31 S. W. 679. The Foster Case, supra, is in many of its features very similar to this case. In that case the purchaser asked for 30 days to examine and satisfy herself as to an abstract, and that feature the court stressed as showing that it was not an unconditional acceptance. There was nothing said in this case in the defendant's proposal that he would execute a deed and give an abstract satisfactory to the plaintiff. This was a counter proposition in defendant's purported acceptance.

[9] It is elementary if the acceptance varies from the offer it is in effect a rejection and a counter proposal, and accordingly the offer thereupon lapses as in case of express rejection.

[10, 11] But it is insisted by plaintiff that it was customary to give abstracts of title to land upon sale, and that this entered into the proposal of sale and as a part thereof. The custom proven by plaintiff in this case was simply to give an abstract. Whether that custom required a merchantable title, a good title, perfect title, legal or equitable title, to be shown by the abstract, the evidence fails to show. Certainly it does not show that in a contract for the sale of land that the deed and abstract must be given satisfactory to the proposed purchaser. This would indeed be an onerous obligation, and would practically place the consummation of the contract or the conclusion of the sale in the hands of the purchaser. However, in this case, the plaintiff did not rely on any such custom, but expressly stipulated in his letter that the deed and abstract must be to his satisfaction. Custom, therefore, would not affect the matter, but it would be controlled by the contract, if made. Daugherty v. Leewright, 174 S. W. 841.

We have concluded that it will not be necessary in this case to discuss whether the letters, if they amounted to a contract, were sufficient with reference to the description of the land, so as to meet the requirements of the statutes with reference to conveying land in writing.

The judgment of the trial court will be affirmed.