

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-19-00485-CV

Rob **JENNINGS** III and El Veleño, Ltd.,
Appellants

v.

Susan **JENNINGS**, Tres Mujeres, Ltd., and Pamela J. Person,
Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 8,479
Honorable José A. López, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 3, 2021

AFFIRMED

In a Rule 11 Settlement Agreement (the Agreement), the parties and a limited partnership

agreed to dissolve the partnership and partition the surface ownership of the Mira Flores Ranch.

Appellants repudiated the Agreement, and Appellees filed a traditional motion for summary

judgment on their breach of contract action and sought specific performance of the Agreement.

The trial court granted Appellees' traditional motion for summary judgment, ordered specific

performance, severed the order, and Appellants appealed.  We affirm the trial court's order.

## BACKGROUND

### A.    The Mira Flores Ranch and the Formation of Jennings Properties, Ltd.

The Mira Flores Ranch is a family property consisting of approximately 13,692 acres located in Zapata County, Texas.  In 1966, the ranch was owned by Roy Jennings, his wife Pauline, and their son Roy Jennings Jr.  Roy owned 6,275.89 acres or a 45.83% interest; Roy Jr. owned 6,561.16 acres or a 47.92% interest; and Pauline owned 855.80 acres or a 6.25% interest.  When Roy died on March 10, 1966, he left his estate to Pauline, which gave her a 52.08% interest in the ranch.  In 1972, Pauline conveyed her interest equally to her three grandchildren, Rob Roy Jennings III, Susan Jennings, and Pamela Jennings.

In 1993, after Roy Jr. and his wife formed Jennings Properties, Ltd., Roy Jr. conveyed his interest of 6,561.16 acres in the ranch to that partnership.  On September 24, 1993, Roy Jr. assigned 5,905.44 acres of his holdings as a limited partner to his three children as follows: (a) to Pamela, 875.258744 undivided acres, (b) to Susan, 875.258744 undivided acres, and (c) to Roy III, 4,154.526512 undivided acres.

As of 1998, the undivided ownership of the Mira Flores Ranch's 13,692.85 acres was (a) Jennings Properties, 6,561.16 undivided acres or a 47.92% interest in the ranch; (b) Roy III: 2,377.23 undivided acres or a 17.36% interest in the ranch; (c) Pamela: 2,377.23 undivided acres or a 17.36% interest in the ranch; and (d) Susan: 2,377.23 undivided acres or a 17.36% interest in the ranch.  Roy Jr. died in 1999 and, in accordance with his will, all his interest in Jennings Properties passed to Roy III.  In 2001, Pamela conveyed all her undivided interest in the ranch to Tres Mujeres, Ltd.  In 2004, Evelyn Jennings, Roy III's mother, died and, in accordance with her will, all her interests in Jennings Properties passed to Roy III.

On June 15, 2007, the partnership name was changed from Jennings Properties, Ltd. to Roy Jennings Properties, Ltd.  On September 10, 2010, Roy III conveyed 7,116.31 of his interest in the

Mira Flores Ranch and in Roy Jennings Properties to El Veleño, Ltd., a partnership he formed with his wife, Lucila Jennings. He kept an interest of 65.55 acres in Roy Jennings Properties.

## B. Procedural Background

On November 25, 2013, Susan, Pamela, and Tres Mujeres (the Plaintiffs) sued Roy III to partition the Mira Flores Ranch. Later, El Veleño was added as a defendant. On July 2, 2015, the parties executed, and the trial court approved, a Stipulation of Facts which stipulated the percentage surface ownership interests in the Mira Flores Ranch that Roy III, El Veleño, Tres Mujeres, and Susan each owned.

On November 5, 2015, plaintiffs amended their petition to include a cause of action for involuntary dissolution of Jennings Properties and a declaration that the partnership terminated. The parties subsequently mediated the case and agreed to settle their disputes. On June 29, 2017, the parties and Roy Jennings Properties executed the Agreement that provided the following conditions:

1)  The Parties shall as soon as possible and shall within forty-five (45) days from date hereof execute any and all documents necessary to cause the dissolution of Roy Jennings Properties, Ltd. (formerly named Jennings Properties, Ltd.), which currently owns 6,555.66 acres out of the gross acres of the Mira Flores Ranch, currently estimated to be 13,681.40[1] acres (re-surveyed to be 13,692.85 acres).

    The dissolution legal work shall be done by George Juárez from Laredo, Texas, and he will be paid proportionately by the Parties based on their interest set out in Paragraph 4 herein.

2)  The current percentage ownership of the surface of the Mira Flores Ranch acreage is currently as follows:
    Roy Jennings Properties, Ltd.      47.91667%
    Tres Mujeres, Ltd.      17.36111%
    El Veleño, Ltd.      17.36111%
    Susan Jennings      17.36111%

3)  The Parties as part of the dissolution of Roy Jennings Properties, Ltd., shall execute conveyances to the surface estate consisting of approximately

---

[1] Due to a re-survey, the acreage changed from 13,681 to 13,692 acres.

6,555.67 undivided acres of the Mira Flores Ranch located in Zapata County, Texas as follows:

874.53 undivided acres to Susan Jennings
874.53 undivided acres to Tres Mujeres, Ltd.
65.55 undivided acres to Rob R. Jennings, III
4,741.06 undivided acres to El Veleño

4)      Subsequent to the aforementioned conveyances, the surface title to the Mira Flores Ranch will be held as follows:

| | | |
|---|---|---|
| Susan Jennings | (2,375.24 + 74.53) | 3,249.77 |
| Tres Mujeres, Ltd. | | 3,249.77 |
| Rob R. Jennings, III | | 65.55 |
| El Veleño, Ltd. (by conveyance of | | |
| Rob R. Jennings, III, et ux of September 10, 2010) | | 7,116.31 |

Per the Agreement, the parties agreed to execute all documents necessary to cause the dissolution of Roy Jennings Properties by August 13, 2017. In July of 2017, the parties hired attorney George Juárez to prepare the dissolution documents. On August 8, 2017, Juárez, via e-mail, forwarded to the parties' attorneys a draft of two dissolution documents, one entitled "Partnership and Election of General Partner" and the other entitled "Termination of Limited Partnership Agreement." In that same e-mail, Juárez asked the parties' attorneys to have their clients execute both documents. None of the parties executed either document at that time.

After conferring and meeting with the parties' attorneys and revising the documents, on August 30, 2017, Juárez, via e-mail, forwarded the dissolution documents for final approval by the parties. It is apparent from the record that an agreement was not reached on the language of the revised documents because, on October 4, 2017, Juárez met with the parties' attorneys to review, discuss, and revise the dissolution documents. On October 5, 2017, Juárez sent an e-mail to the parties' attorneys confirming, among other things, that each agreed the dissolution documents would be executed by the parties on or before October 13, 2017.

On October 12, 2017, Susan and Tres Mujeres executed the revised dissolution documents, but Roy III did not. On November 27, 2017, Appellants' attorney, Donato Ramos, filed a motion

to withdraw, which was granted. On December 4, 2017, Rob III and El Veleño filed a revocation of the Agreement.

On March 2, 2018, Susan, Pamela, and Tres Mujeres amended their petition to include a cause of action for breach of the Agreement. After discovery, Susan, Pamela, and Tres Mujeres filed a traditional motion for summary judgment; Roy III and El Veleño filed no-evidence and traditional motions for summary judgment.

On December 18, 2018, attorney Ramos executed an affidavit attesting that on October 4, 2017, he met with Juárez and the plaintiffs' attorneys but that his "clients did not authorize me to extend the forty-five(45) [sic] days deadline set forth in the June 29, 2017 Rule 11 Agreement . . . nor did my clients authorize me to agree to any of the matters set forth in Mr. Juárez' e-mail of October 5,2017 [sic]."

On January 23, 2019, the trial court granted Plaintiffs' motion for summary judgment[2] and ordered Roy III and El Veleño to execute the dissolution documents drafted by Juárez and the distribution deed. The summary judgment order was severed, and Roy III and El Veleño appeal.

### ISSUES ON APPEAL

Appellants raise three issues that deal only with that portion of the Agreement that provides,

1) The Parties shall as soon as possible and shall within forty-five (45) days from date hereof execute any and all documents necessary to cause the dissolution of Roy Jennings Properties, Ltd. (formerly named Jennings Properties, Ltd.), which currently owns 6,555.66 acres out of the gross acres of the Mira Flores Ranch, currently estimated to be 13,681.40 acres (re-surveyed to be 13,692.85 acres).

---

[2] In its January 23, 2019 order, the trial court states it considered "Plaintiffs' [Traditional] Motion for Summary Judgment, the exhibits attached thereto, [and] the respective oppositions filed thereto." The trial court's order does not state it considered Appellants' traditional or no-evidence motions for summary judgment, and the order does not expressly dispose of either of Appellants' motions. We conclude the trial court reviewed the evidence in Appellants' responses but did not rule on the merits of Appellants' traditional or no-evidence motions for summary judgment.

> The dissolution legal work shall be done by George Juárez from Laredo, Texas, and he will be paid proportionately by the Parties based on their interest set out in Paragraph 4 herein.

Appellants contend that the trial court erred in granting Appellees' traditional motion for summary judgment because (1) Appellees failed to plead and prove they were ready, willing, and able to timely perform their obligations under the Agreement as required under *DiGiuseppe v. Lawler*;[3] (2) the Agreement is not an enforceable contract; and, (3) under *Maroy International, Inc. v. Cantu*,[4] the timing of performance under the Agreement was a disputed issue for the trier of fact.

For clarity, we reorganize Appellants' issues as follows: (1) Is the Agreement an enforceable contract? (2) Was the timing of performance a disputed issue for the trier of fact under *Maroy International v. Cantu*? and (3) Did Appellees fail to plead and prove they were ready, willing, and able to timely perform their obligations under the Agreement under *DiGiuseppe v. Lawler*?

## STANDARD OF REVIEW

"We review grants of summary judgment de novo." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

"A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Parker*, 514

---

[3] 269 S.W.3d 588, 593 (Tex. 2008).
[4] No. 04-12-00193-CV, 2013 WL 1149066, at *2 (Tex. App.—San Antonio Mar. 20, 2013, pet. denied) (mem. op.).

S.W.3d at 220 (citing TEX. R. CIV. P. 166a(c)); *accord Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). "An issue is conclusively established 'if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.'" *Hansen*, 525 S.W.3d at 681 (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)).

**ENFORCEABLE CONTRACT**

### A.      Arguments of the Parties

Appellants argue that the trial court erred in ordering specific performance of the Agreement because it is not an enforceable contract. They contend the language "any and all documents necessary to cause the dissolution of [the partnership]" makes the Agreement void for two reasons. First, they claim that under *Brillhart v. Beever*, the language is evidence that the parties did not intend the Agreement to be binding and, instead, intended it to be the subject of future negotiations. *See Brillhart v. Beever*, 198 S.W. 973 (Tex. App.—Amarillo 1917, no writ). Second, they argue that the language, being an essential term of the Agreement, is vague and not definite because it is subject to future negotiations.

Appellees counter that the essence of the Agreement was the partition of the surface acreage of the ranch in accordance with the Stipulation of Facts and not the perfunctory execution of the partnership dissolution documents, which is not a material term to the agreement. For this reason, they argue, the Agreement is an enforceable contract.

### B.      Enforceable Agreement

A settlement "agreement is enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a); *accord Hardman v. Dault*, 2 S.W.3d 378, 380 (Tex. App.—San Antonio 1999, no pet.). A Rule 11 settlement agreement must be "complete within itself in every material detail, and [contain] all of the essential elements of the agreement." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citing *Cohen v. McCutchin*, 565 S.W.2d

230, 232 (Tex. 1978)).  A settlement agreement containing all essential or material terms[5] is enforceable as a matter of law.  *MKM Eng'rs, Inc. v. Guzder*, 476 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *McCalla v. Baker's Campgrounds, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013)).

### C.  Identifying Essential Terms

"The question of whether a term is material is a legal one, and we review it de novo, taking each contract on a case-by-case basis."  *Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 64 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)).  Generally, whether a contract term is essential is also determined in light of the circumstances of the contract.  *Amedisys v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2014).

Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain."  *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi 2013, no pet.).  An essential element of an enforceable settlement agreement is the intent of the parties to be bound by that agreement.  *Hardman*, 2 S.W.3d at 380 (citing *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988)).

---

[5] Courts use the words "essential" and "material" interchangeably to denote the same meaning.  *See, e.g.*, *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 481 (Tex. 2019); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Thomas v. Miller*, 500 S.W.3d 601, 608 (Tex. App.—Texarkana 2016, no pet.); *Marx v. FDP, LP*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied); *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 100 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 466 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (Jamison, J., concurring); *Martin v. Martin*, 326 S.W.3d 741, 753 (Tex. App.—Texarkana 2010, pet. denied); *Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 868 (Tex. App.—Tyler 2010, pet. denied); *Beaurline v. Smith*, 426 S.W.2d 295, 296 (Tex. App.—Corpus Christi 1968, writ ref'd n.r.e.); *Hubbard City Cotton Oil & Gin Co. v. Nickels*, 133 S.W. 489, 490–91 (Tex. App.—Dallas 1910, no writ).

**D.    Clarity of Essential Terms**

Essential terms of a contract must be definite, certain, and clear, and, if they are not, the contract is unenforceable.  *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Marx v. FDP, LP*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied).  The rules regarding definiteness of essential terms in a contract are based on the concept that a party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain. *Oakrock Expl. Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied) (citing *Tex. Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 830 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom. Morgan Stanley & Co., Inc. v. Tex. Oil Co.*, 958 S.W.2d 178 (Tex. 1997)).  A court may uphold an agreement by supplying missing terms but may not create a contract where none exits and, generally, may not interpolate or eliminate essential terms.  *Id.* When the intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law.  *Cf. Padilla*, 907 S.W.2d at 461–62.

**E.    Open or Missing Terms**

Courts often enforce settlement agreements that contemplate additional documentation or leave other terms open to be agreed upon later. *Oakrock Expl.*, 87 S.W.3d at 690; *see Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972); *MKM Eng'rs*, 476 S.W.3d at 778; *Eastman Gas Co. v. Goodrich Petrol. Co.*, 456 S.W.3d 319, 326 (Tex. App.—Texarkana 2015, pet. denied); *Kanan*, 407 S.W.3d at 330; *Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied); *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 748–49 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *E.P. Towne Ctr. Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.3d 117, 122 (Tex. App.—El Paso 2007, no pet.); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex. App.—Waco 2005, pet denied); *Mabon Ltd. v. Afri–Carib Enters., Inc.*, 29 S.W.3d 291, 300 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

> The critical issue for determining enforceability when the parties agree that some terms will remain open is whether the parties intended for their agreement to be a present, binding agreement in the absence of an agreement on the remaining terms or whether they intended their agreement to have no legal significance until agreement on the remaining terms is reached.

*MKM Eng'rs*, 476 S.W.3d at 779. If the parties do not intend to be bound until other terms are negotiated, then "there is no binding contract, but only an agreement to agree." *Stergiou*, 438 S.W.3d at 748 (quoting *Mabon*, 29 S.W.3d at 300). Although intent to be bound is generally a question of fact, it may be determined as a matter of law. *Foreca*, 758 S.W.2d at 746; *Hardman*, 2 S.W.3d at 380.

## F.     Provision at Issue

Appellants argue that the following language makes the Agreement merely an agreement to agree:

1)     The Parties shall as soon as possible and shall within forty-five (45) days from date hereof execute any and all documents necessary to cause the dissolution of Roy Jennings Properties, Ltd. (formerly named Jennings Properties, Ltd.), which currently owns 6,555.66 acres out of the gross acres of the Mira Flores Ranch, currently estimated to be 13,681.40 acres (re-surveyed to be 13,692.85 acres).

The dissolution legal work shall be done by George Juárez from Laredo, Texas, and he will be paid proportionately by the Parties based on their interest set out in Paragraph 4 herein.

We disagree. Under this provision, the parties were to dissolve Roy Jennings Properties and have Juárez do the legal work to dissolve it. The plain language is clear and unambiguous, *cf. Padilla*, 907 S.W.2d at 461–62, and Appellants do not argue otherwise. Rather, Appellants rely on *Brillhart v. Beever*, 198 S.W. 973 (Tex. App.—Amarillo 1917, no writ), for their argument that so long as the dissolution documents are incomplete, the Agreement is not an enforceable contract. They argue that the words "any and all documents necessary to cause the dissolution" demonstrate that the parties did not intend the Agreement to be their final agreement.

## G.     Distinguishing *Brillhart*

The issue in *Brillhart* was whether the following letter constituted an enforceable contract to sell a piece of land,

> Mr. G. C. Brillhart, Gray, Oklahoma—Dear Sir: Received your letter with check for seventy-five dollars a few days ago, in regard to offer on my land. I cannot accept your price, the amount cash you offer is hardly enough to justify me in selling, and the 6% interest on deferred payments is low; *however I will make proposal on your terms,* you assume the seven hundred dollars $700.00 due the state on this land at 3% interest payable annually, and give me one thousand dollars $1,000.00 cash, and I will take your notes for four thousand $4,000.00, one thousand payable annually, with interest at 6% on deferred payments, all interest payable annually*; will go into further agreement with you if this interest you let me know, this is the best I can do on a thousand dollars cash.*

*Id.* at 974 (emphasis added).  The court acknowledged that the price for the land and the terms of payment "were an important feature of the contract." *Id.* at 975.  The court concluded that because the letter ended with "will go into further agreement with you if this interest you let me know," the letter did not constitute a concluded agreement. *Id.*  Instead, the court found the letter to be an offer to open further negotiations and not one "which can be converted into a contract by acceptance." *Id.*  The court stated,

> An agreement to be finally settled, must comprise all the terms which the parties intended to introduce into the agreement. . . .  "The circumstance that the parties do intend a subsequent agreement to be made is strong evidence to show that they did not intend the previous negotiations to amount to an agreement."

*Id.* (quoting *Ridgeway v. Wharton*, 6 H. L. Cas. 268 (Lord Cranworth)).  We agree with Appellants that, as in *Brillhart*, "when an agreement leaves *material matters open* for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (emphasis added) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)); *Fiduciary Fin. Servs.*, 376 S.W.3d at 256.  We do not agree, however, that the language "any and all documents necessary to cause the dissolution" is a material or essential term of the Agreement.

**H.     No Subsequent Agreement Condition**

Unlike the language in *Brillhart*, the Agreement here does not contain language that the Agreement was merely intended as an offer or a preliminary and non-binding agreement. *See Brillhart*, 198 S.W. at 975–76; *see also MKM Eng'rs*, 476 S.W.3d at 779 (citing *John Wood Grp. USA, Inc. v. ICO Inc.*, 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)). Nowhere in the Agreement is there language that indicates that the parties did not intend to be bound until they negotiated or executed the dissolution documents. *See Stergiou*, 438 S.W.3d at 748. The words "as soon as possible" do not indicate the agreement to dissolve the partnership was subject to the parties' subsequent agreement on the details of the dissolution documents or that their execution was a condition precedent to the Agreement. *See Hardman*, 2 S.W.3d at 380. As in *Hardman*, the language "any and all necessary documents" simply refers to the documents necessary to carry out the agreement to dissolve the partnership. *Id.* For these reasons, we conclude that, as a matter of law, the language "any and all necessary documents to cause the dissolution" is not an essential term in the Agreement.

**I.     Missing Party Assertion**

Appellants also assert that because Roy Jennings Properties was not a party to the lawsuit, it was the parties' intent to leave the Agreement open for further negotiations. We construe Appellants' brief reasonably, yet liberally. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (requiring courts of appeals "to construe briefing 'reasonably, yet liberally, so that the right to appellate review is not lost by waiver.'" (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008))).

On this putative point, Appellants' brief does not "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010).

Appellants asserted the Agreement was "open for future negotiations especially because Roy Jennings Properties, Ltd, is not even a party to the lawsuit," but they provided no authorities to support their assertion. Construing their brief reasonably yet liberally, we necessarily conclude Appellants failed to present a legal argument for our review. *See Parker*, 514 S.W.3d at 222 (quoting *Perry*, 272 S.W.3d at 587).

## J. Indefinite or Vague Language

Appellants also argue that the term "any and all documents" is indefinite or vague. Having concluded that "any and all documents" is not a material term to the Agreement, we need not consider Appellants' argument that that language is indefinite or vague. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221 (noting material terms must be definite, certain, and clear).

For the above reasons, we conclude that, as a matter of law, the Agreement is an enforceable contract. We overrule Appellants' second issue.

We next address the issue of timing of performance under the Agreement.

## TIMING OF PERFORMANCE AS FACT ISSUE

## A. Arguments of the Parties

Appellants contend that a material term of the Agreement required Appellees to execute the dissolution documents within forty-five days of when the Agreement was signed, which they did not. Therefore, they argue, the Agreement was void. In the alternative, Appellants rely on this court's opinion in *Maroy Int'l, Inc. v. Cantu*, No. 04-12-00193-CV, 2013 WL 1149066 (Tex. App.—San Antonio Mar. 20, 2013, pet. denied) (mem. op.) for the proposition that if the timing is not a material term of the Agreement, then the issue of time is a disputed issue for the trier of fact. Accordingly, they argue, summary judgment should not have been granted.

Appellees contend that the language "as soon as possible . . . within forty-five (45) days" is not a material term to the Agreement. In the alternative, they contend that even if the language

was material, Appellants waived the forty-five-day deadline when their attorney engaged in a subsequent meeting with all counsel to discuss the dissolution drafts prepared by Juárez.

## B.    Applicable Law

In *Maroy International*, we joined other courts in recognizing that a date of performance in a contract does not in itself mean that the parties intended timely performance to be of the essence. *Maroy Int'l*, 2013 WL 1149066, at *2 (citing *Breof BNK Tex., L.P.*, 370 S.W.3d at 64; *Municipal-Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31, 36 (Tex. App.—Texarkana 1998, no pet.); *Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex. App.—Amarillo 1994, no writ)). "For timely performance to be a material term of [a] contract, the contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence." *Maroy, Int'l*, 2013 WL 1149066, at *2 (alteration in original) (quoting *Deep Mines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.)) (citing *Breof BNK Tex., L.P.*, 370 S.W.3d at 64); *accord In re Caballero*, 441 S.W.3d 562, 574 (Tex. App.—El Paso 2014, no pet.). If a contract expressly makes "time of the essence," the issue is a fact question. *Maroy Int'l*, 2013 WL 1149066 at *2 (citing *Breof BNK Tex., L.P.*, 370 S.W.3d at 64).

## C.    Deadline is not a Material Term

The Agreement provision at issue calls for the execution of the dissolution documents "as soon as possible" and "within forty-five (45) days from the date [of the Agreement]." Because the Agreement was executed by all parties on June 23, 2017, the forty-five-day period expired on August 13, 2017. The Agreement, however, is devoid of language that indicates that the parties intended the execution of the dissolution documents to be of the essence or that the Agreement was subject to the dissolution documents being executed by August 13, 2017. Further, there was no summary judgment evidence to show that the parties intended for time to be of the essence. To

the contrary, the summary judgment evidence shows that after the initial draft of the dissolution documents was tendered to the parties' attorneys by Juárez on August 8, 2017, the parties and Juárez continued up to October 4, 2017, to review relevant partnership documents, discuss the drafts prepared by Juárez, and address matters concerning the partnership's projected expenses for its dissolution.

Taking Appellants' summary judgment evidence as true, we nevertheless conclude the parties did not intend the forty-five-day deadline to be of the essence to the Agreement. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

### D. Deadline as Fact Issue

On the other hand, we agree with Appellants that the issue—of whether the Agreement required Appellees to execute the dissolution documents within forty-five-days—became a fact question that precluded the trial court from granting Appellees' motion for summary judgment. *See Cantu*, 2013 WL 1149066 at *2; *Breof BNK Tex., L.P.*, 370 S.W.3d at 64.

But our analysis does not end there. Appellees argue that Appellants waived any complaint regarding the forty-five-day requirement, and we agree.

"[A] stipulated time limit may be extended either by agreement or by waiver." *Smith v. Hues*, 540 S.W.2d 485, 488 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (citing *Puckett v. Hoover*, 202 S.W.2d 209 (Tex. 1947); *Langley v. Norris*, 173 S.W.2d 454 (Tex. 1943); *Laredo Hides Co. v. H. & H. Meat Prods. Co.*, 513 S.W.2d 210 (Tex. App.—Corpus Christi 1974, writ ref'd n.r.e.)); *see also Maroy Int'l*, 2013 WL 1149066, at *2. If by waiver, "[s]uch a waiver . . . 'may be shown . . . from the circumstances or course of dealing.'" *Smith*, 540 S.W.2d at 488 (quoting *Puckett*, 202 S.W.2d at 212).

It is undisputed that Appellants did not execute the dissolution documents by the August 13, 2017 deadline. It is also undisputed that on or after August 8, 2017, the day Juárez tendered

his first draft of the dissolution documents to the parties' attorneys, and up to October 4, 2017, Appellants' former attorney, Donato Ramos, received e-mails from Juárez containing drafts of the dissolution documents, revisions to the documents, and a memo from Juárez concerning the partnership's bank statements, and Appellants engaged in conferences with Appellees' attorneys and Juárez to discuss drafts of the dissolution documents. It is likewise undisputed that Appellants did not revoke the Agreement until December 4, 2017.

Appellants assert their former attorney's affidavit, submitted as summary judgment evidence, at least raises a fact issue on waiver. We take the affidavit statements as true, *see Cantey Hanger*, 467 S.W.3d at 481, but they rebut only the attorney's authority to waive the deadline. The statements do not rebut the other undisputed evidence of Appellants' actions demonstrating waiver.

Based on the undisputed evidence, we conclude Appellants waived the Agreement's deadline to execute the dissolution documents.

We overrule Appellants' third issue and turn to Appellants' last remaining issue.

### PLEADING AND PROVING ENTITLEMENT TO SPECIFIC PERFORMANCE

**A.      Arguments of the Parties**

Appellants next argue Appellees were not entitled to specific performance because they failed to plead and prove they were ready, willing, and able to perform their obligations under the Agreement as required under *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008).

Appellees argue that, although they pled that all conditions precedent to their suit for specific performance were met, because Appellants repudiated the Agreement, they were excused from tendering performance before filing their suit for specific performance.

**B.       Applicable Law**

Specific performance is an equitable remedy governed by equity principles and may be granted upon proof of breach of contract. *See Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953); *Levetz v. Sutton*, 404 S.W.3d 798, 805 (Tex. App.—Dallas 2013, pet. denied); *Living Christ Church, Inc. v. Jones*, 734 S.W.2d 417, 419 (Tex. App.—Dallas 1987, writ denied).

Specific performance "is not a remedy which exists as a matter of right." *Kress*, 261 S.W.2d at 704; *see also* 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 81.04[1][c] (Michael Allan Wolf ed., 2000) (observing that specific performance is not a matter of right even to enforce terms of a contract but is "a matter of grace" in the discretion of the court). Specific performance "rests in the sound discretion of the trial court, and its action will not be disturbed unless an abuse of discretion is shown." *Walzem Dev. Co. v. Gerfers*, 487 S.W.2d 219, 222 (Tex. App.—San Antonio 1972, writ ref'd n.r.e.); *accord Fabra v. Fabra*, 221 S.W. 1008, 1009–10 (Tex. App.—San Antonio 1920, writ ref'd).

"[T]o be entitled to specific enforcement of a contract, a party must show that the contract in question is valid and enforceable." *Nguyen v. Woodley*, 273 S.W.3d 891, 898 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *accord Antwine v. Reed*, 199 S.W.2d 482, 485 (Tex. 1947); *Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 527 (Tex. App.—Amarillo 1998, pet. denied). "An essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract." *DiGiuseppe*, 269 S.W.3d at 593.

A showing that the party seeking specific performance substantially performed in compliance with the contract and is able to continue performing its part of the agreement meets the "ready, willing, and able" requirements. *Id.* at 594; *see Glass v. Anderson*, 596 S.W.2d 507, 513 (Tex. 1980). If a defendant repudiates a contract, a plaintiff may be excused from tendering

performance before filing suit; but "a plaintiff is still obligated to plead and prove his readiness, willingness, and ability to perform at relevant times before specific performance may be awarded." *DiGiuseppe*, 269 S.W.3d at 594–95.

### C. Pleading Substantial Performance

As noted throughout this opinion, Appellants challenge Appellees' performance under paragraph (1) of the Agreement. In this issue, Appellants argue that because Appellees did not plead and prove they were ready, willing, and able to execute the dissolution documents by the August 13, 2017 deadline, Appellees were not entitled to specific performance. Having determined that Appellants waived any complaint on the deadline to execute the dissolution documents, the only remaining issue is whether Appellees met the *DiGiuseppe* requirements to *plead and prove* they were ready, willing, and able to execute the dissolution documents. *See id.* at 593.

In their live pleading, Appellees did not expressly state they were "ready, willing, and able to perform." Instead, Appellees assert throughout their pleading that they (1) executed and delivered the dissolution documents, (2) substantially complied and performed pursuant to the Agreement, and (3) complied with conditions precedent to the Agreement. We conclude that Appellees' assertions meet the *DiGiuseppe* pleading requirements. *See id.* at 594.

### D. Proving Substantial Performance

Our next inquiry is whether Appellees proved they substantially performed under the Agreement. The uncontroverted evidence shows that (1) all parties hired Juárez to prepare the legal documents for the dissolution, (2) the dissolution documents were executed by the Appellees and, (3) pursuant to the Agreement, Appellees paid Juárez their portion of his fee. There was nothing more to do on their part with respect to the dissolution. We therefore conclude that

Appellees fully performed their obligations under part (1) of the Agreement and, accordingly, met their burden to prove substantial compliance. *See id.*

For the reasons above, we conclude the trial court did not abuse its discretion when it granted specific performance of the Agreement.

### E.     Appellants' Reply Brief

In their reply brief, Appellants deny Appellees' contention that Appellants failed to preserve any argument that the Agreement was unenforceable because Roy Jennings Properties was not a party to the lawsuit. In that reply, Appellants argue that they preserved the issue for appeal in their cross-motion for summary judgment, which alleged the reasons why Roy Jennings Properties could not be dissolved and why the trial court erred in granting Appellees' summary judgment. They further reply that, under the various provisions of the partnership agreement, Susan and Tres Mujeres, as limited partners, did not have the right to terminate the partnership agreement, liquidate the partnership, or bring a partition suit to partition the partnership's property. Finally, they assert that when Roy III's parents died, through their will, Roy III became Jennings Properties' general partner.

"[An] appellant may file a reply brief addressing any matter in the appellee's brief." *See* TEX. R. APP. P. 38.3; *Gamboa v. Gamboa*, 383 S.W.3d 263, 274 (Tex. App.—San Antonio 2012, no pet.). But "[t]he Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's briefs but not raised by the appellant's original brief." *Dallas Cty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied); *accord In re Commitment of Gipson*, 580 S.W.3d 476, 488 n.6 (Tex. App.—Austin 2019, no pet.); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied); *see* TEX. R. APP. P. 38.3; *Fox v. City of El Paso*, 292 S.W.3d

247, 249 (Tex. App.—El Paso 2009, pet. denied) (a reply brief may not be utilized to present issues to the court that were not presented in the original brief).

To the extent Appellants' contention (that, under the partnership agreement, Susan and Tres Mujeres, as limited partners, do not have the right to terminate the partnership, liquidate it, or bring a partition suit) is a new issue, Appellants cannot raise it for the first time in their reply brief. *See Gonzalez*, 183 S.W.3d at 104.

## CONCLUSION

We affirm the trial court's order granting Appellees traditional summary judgment and ordering specific performance of the Rule 11 settlement agreement.

Patricia O. Alvarez, Justice